JAMES D. GRIFFITH *et al.*, Not Individually, But Derivatively on Behalf of the Wilmette Harbor Association, *et al.*, Plaintiffs-Appellants, v. WILMETTE HARBOR ASSOCIATION, INC., *et al.*, Defendants-Appellees.

First District (1st Division)    No. 1—07—0893

Opinion filed December 17, 2007.

Gilbert Y. Liss, of Chicago, for appellants.

Hinshaw & Culbertson, LLP, of Chicago (Thomas L. Browne, Matthew R. Henderson, and Timothy G. Shelton, of counsel), for appellee Paul Uhlenhop.

Tribler, Orpett & Meyer, P.C., of Chicago (Mitchell A. Orpett and Kurt B. Drain, of counsel), for other appellees.

JUSTICE ROBERT E. GORDON delivered the opinion of the court:

This case involves a dispute between the Wilmette Harbor Association, its directors, some of its members, its attorney, and a membership applicant. The association manages the distribution of boat slips in the Wilmette harbor for the mooring of boats or vessels. To gain membership to the association, one must apply to the association by annually submitting a signed application and a corresponding application fee.

The facts giving rise to this appeal are somewhat convoluted. The litigation involves multiple parties and multiple claims. Although the multiple claims in this suit are contained in one complaint, for ease of discussion, we will discuss the facts of this case in four sections. The first section will discuss the derivative lawsuit brought by the association member plaintiffs on behalf of the association, against itself and its directors. The second section will discuss the lawsuit brought by the association member plaintiffs against defendant Uhlenhop. The third section will discuss the class action lawsuit brought by Greenberg against the association. The fourth section will discuss the procedural history of this case.

## A. The Derivative Suit

Plaintiffs James D. Griffith, Steven Cotsirilos and Robert E. Janes (association member plaintiffs) are members of the Wilmette Harbor Association (association), an Illinois not-for-profit corporation organized under the General Not For Profit Corporation Act of 1986 (805 ILCS 105/101 *et seq.* (West 2004)). The association operates the Wilmette harbor. The harbor is owned by the Metropolitan Sanitary District of Chicago and pursuant to a lease dated March 18, 1964, is leased to the Wilmette Park District. Defendants William Allen, R. Bruce Johnston, George W. Darrow, Larry M. Lasky, Val Smith, George Stembridge, William C. Pool, Todd Smith, Dave Schmitt, Rosalind Schmitt, Bill Tueting and John Baker (association directors) were directors of the association at all times relevant to the instant dispute.

Prior to the instant suit, Kent Heitzinger, a former association director, demanded access to the association's books and records. After the association's denial of his request, Heitzinger filed an action in the circuit court of Cook County seeking access to the association's books and records. In their brief to this court, the association member plaintiffs state that the resulting litigation cost the association in excess of $500,000.

In 2001, the association directors amended the association's bylaws to include a mandatory mediation/arbitration provision. The association's bylaws gave the directors the right to make amendments. That same year, a clause specifically acknowledging the mandatory mediation/arbitration provision appeared for the first time on the annual membership application. The clause on the membership application, states as follows:

> "I agree, in the event a Mooring Permit ('Permit') is issued to me by the Wilmette Harbor Association (the Association), to abide by the By-Laws of the Association and all regulations concerning the operation of Wilmette Harbor.

* * *

Notwithstanding the foregoing, I also agree to resolve any controversy, dispute or claim against the Association, its employees, officers or directors or against, between or among any of its members or former members arising from or relating to any mooring permit, mooring, membership in the Association or operation or use of Wilmette Harbor, the Association or its facilities through mediation and/or arbitration in strict accordance with Article X of the By-Laws."

Article X of the bylaws provides, in relevant part:

"Section 1. *Mandatory Mediation.* Any controversy, dispute or claim against the Association, its employees, Officers or Directors or against, between or among any of its Members or former Members arising from or relating to any mooring permit, mooring, membership in the Association or operation or use of Wilmette Harbor, the Association or its facilities (hereinafter, collectively, 'Claim') shall be subject to mediation in an endeavor to settle the dispute in an amicable manner as a condition precedent to arbitration required hereunder in Section 2 ***.

Section 2. *Mandatory Arbitration.* Any Claim not resolved by mediation as set forth in Section 1 hereof (the 'Mediation Claim'), including disputes as to the scope and meaning of this Article and the arbitrability of any Claim, shall be decided by arbitration. A claim in arbitration must be initiated within ninety (90) calendar days after termination of the Mediation Claim pursuant to Rule—14 of the Mediation Rules."

After the addition of the mandatory mediation/arbitration provision, association member plaintiffs made requests to examine the association's books and records, but their requests were denied. They filed suit to gain access to the association's books and records and were "partially successful." They filed a second suit "to pursue issues disclosed by that discovery" but their suit was dismissed for want of prosecution. The instant suit was filed thereafter.

Count I of the complaint was directed against the association and sought declaratory relief from the arbitration/mediation provision contained in the association's bylaws. Count I alleged that the association directors amended the bylaws of the association to include the arbitration/mediation provision in bad faith to "protect themselves from suit brought by Kent Heitzinger and others."

Counts II, III and IV of the complaint were directed against the association and the association directors. Count II alleged waste of corporate assets; count III alleged breach of fiduciary duties; and count IV alleged civil conspiracy. Counts II and III alleged a myriad of wrongful acts committed by the association directors. The following were among the wrongful acts alleged by the complaint: (1) "imple-

menting a scheme to provide free or discounted moorings" to favored association members on a basis other than seniority, (2) negligently overpaying for dredging, or, in the alternative, purposefully overpaying for dredging in order to receive a "kick-back" from the contractor that provided dredging services, and (3) "spending thousands of dollars defending Kent Heitzinger's suit, when he was entitled to receipt of the information he requested." Count IV alleged civil conspiracy for the following: (1) "implementing a scheme to provide free or discounted moorings" to members favored by the association directors, (2) overpaying for dredging, (3) awarding dredging contracts without accepting bids from multiple contractors, (4) paying "Paul Uhlenhop thousands of dollars he should not have received," and (5) profiting from "kick-backs" for dredging contracts.

### B. Suit Against Defendant Uhlenhop

Defendant Paul Uhlenhop, an attorney, is an association member and acted as the association's legal counsel at all times relevant to the instant dispute.

Counts V and VI were directed against defendant Uhlenhop and alleged breach of fiduciary duties and negligence, respectively. The counts alleged that defendant Uhlenhop negligently or purposefully advised the association to contest Heitzinger's request to access the association's books and records and received the majority of the $500,000 legal fees spent in opposing Heitzinger's request.

### C. The Class Action Suit

Plaintiff Steven R. Greenberg applied for a slip to moor a boat or vessel at Wilmette harbor. His application and the related fee were returned to him, with a letter rejecting his application. Count VII of the complaint was pled as a class action claim on behalf of all persons on the slip waiting list and was directed against the association and the association directors and alleged breach of fiduciary duties for awarding moorings to "favored members" on a basis other than seniority. Greenberg sought to be declared the class representative.

### D. Procedural History

As an initial matter, four of the named defendants in the instant suit—Larry Lasky, Todd Smith, Dave Schmitt and John Baker—have never been served in this matter and have thus never appeared.

On December 11, 2006, the association and the association directors moved the trial court to stay and compel mediation/arbitration or dismiss the plaintiffs' complaint. A hearing was held on December 20, 2006, in regard to the motion. In response to the argument that plaintiffs needed discovery to respond to the motion to dismiss, the

trial court entered an order allowing plaintiffs to explain the bases for additional discovery in their substantive response to the motion to dismiss.

On January 7, 2007, plaintiffs filed a "Response in Opposition to Defendants' Motion to Dismiss or Stay and Request for Discovery Prior to Ruling." Plaintiffs contended that they needed additional discovery to investigate whether the association directors amended the bylaws to include the mandatory mediation/arbitration provision in bad faith. Plaintiffs did not submit an affidavit pursuant to Illinois Supreme Court Rule 191 (134 Ill. 2d R. 191) in support of their request for discovery.

On January 24, 2007, counsel for the association and association directors submitted a letter to the trial court and all parties, enclosing four Illinois decisions holding that the question of whether claims must be submitted to arbitration must be determined initially by an arbitration panel and not by the court system.

On February 16, 2007, defendant Uhlenhop filed a supplemental brief in support of his motion to dismiss or stay.

On February 22, 2007, plaintiffs filed their response in opposition to defendant Uhlenhop's motion to dismiss or stay. Again, plaintiffs did not submit an affidavit pursuant to Illinois Supreme Court Rule 191 in support of their request for discovery.

Oral arguments on all motions were heard on March 13, 2007. The trial court entered an order dismissing all counts of the complaint, with prejudice. The trial court found that the dispute alleged by the association member plaintiffs fell within the mediation/arbitration provision contained in the association's bylaws. The court noted that all association member plaintiffs had agreed to submit all claims against the association, its employees, directors, officers, or its members or former members to mediation and then arbitration upon failure of mediation when signing their annual applications for mooring slips. The trial court further found that Greenberg lacked standing to act as the class representative of all plaintiffs on the Wilmette mooring slip waiting list, as he was never on the waiting list. The trial court also found that plaintiff Greenberg had failed to state a cause of action as he did not allege any facts establishing that the association or association directors owed him a legal duty.

This appeal followed.

## ANALYSIS

As noted, the association directors amended the association's bylaws to include a mandatory mediation/arbitration provision in 2001. That same year, a clause specifically acknowledging the manda-

tory mediation/arbitration provision appeared for the first time on the annual membership application. Accordingly, we must first determine whether the directors had the authority to amend the association's bylaws to include the mandatory mediation/arbitration provision.

The association is organized under the General Not For Profit Corporation Act of 1986 (Act) (805 ILCS 105/101 *et seq.* (West 2004)). According to the Act, a not-for-profit corporation can have either voting or nonvoting members. 805 ILCS 105/110.15, 110.20 (West 2004). Where a corporation has members entitled to vote, amendments shall be adopted upon the vote of the members of the corporation in accordance with the procedures set forth in section 110.20 of the Act. 805 ILCS 105/110.20 (West 2004). Where a corporation has no members entitled to vote on amendments, amendments shall be adopted by the board of directors upon the affirmative vote of a majority of the directors in office. 805 ILCS 105/110.15 (West 2004).

■ A review of the association's bylaws, contained in the record of this case, reveals that the power to amend the association's bylaws was specifically vested in the association directors. In fact, the bylaws specify that the vote of the members on any issue other than annual elections is simply advisory and has no binding effect on the directors of the corporation. The record also demonstrates that the amendment at issue here was passed on the affirmative vote of a majority of the directors in office at the time of the amendment. Accordingly, we find that the amendment was properly adopted.

Having determined that the mandatory mediation/arbitration provision was properly adopted, we must now determine whether the trial court erred by dismissing the association member plaintiffs' derivative suit on behalf of the association, against itself and its directors, with prejudice. Association member plaintiffs contend that the trial court erred by dismissing their derivative suit because the trial court should have allowed them to conduct discovery to investigate the "threshold" issue of whether the association directors amended the bylaws to include a mediation/arbitration provision in bad faith to protect themselves from suit by Heitzinger and others.

The association and its directors contend that association member plaintiffs' claims were properly dismissed because the dispute was subject to the mandatory mediation/arbitration provision recited in the association's bylaws. The association and its directors point to the fact that all association member plaintiffs repeatedly agreed to the mediation/arbitration provision when they signed their annual mooring applications with the association.

A motion to compel arbitration and dismiss a lawsuit is similar to a motion to dismiss pursuant to section 2—619(a)(9) of the Illinois

Code of Civil Procedure (Code), which allows a dismissal where the claim asserted is barred by affirmative matter avoiding the legal effect of or defeating the claim. 735 ILCS 5/2—619(a)(9) (West 2000). "The phrase 'affirmative matter' encompasses any defense other than a negation of the essential allegations of the plaintiffs' cause of action." *Travis v. American Manufacturers Mutual Insurance Co.*, 335 Ill. App. 3d 1171, 1174 (2002). "A motion to compel arbitration and dismiss the lawsuit is essentially a motion pursuant to section 2—619(a)(9) to dismiss based on the exclusive remedy of arbitration." *Travis*, 335 Ill. App. 3d at 1174. "Such a motion admits the legal sufficiency of the plaintiff's complaint but interposes some affirmative matter that prevents the lawsuit from going forward." *Travis*, 335 Ill. App. 3d at 1174. "On appeal from a ruling on a section 2—619(a)(9) motion, the standard of review is *de novo*." *Travis*, 335 Ill. App. 3d at 1174.

The trial court's decision to compel arbitration is not discretionary. "Where there is a valid arbitration agreement and the parties' dispute falls within the scope of that agreement, arbitration is mandatory and the trial court must compel it." *Travis*, 335 Ill. App. 3d at 1175. "On the other hand, where there is no valid arbitration agreement or where the parties' dispute does not fall within the scope of that agreement, the trial court may not compel it." *Travis*, 335 Ill. App. 3d at 1175.

Accordingly, we will address the propriety of the trial court's ruling, on defendants' motion to compel mediation/arbitration and dismiss or stay the derivative lawsuit, that the dispute fell within the scope of the mediation/arbitration clause. "At a hearing on a motion to compel arbitration, the only issue before the court is whether an agreement exists to arbitrate the dispute in question." *Travis*, 335 Ill. App. 3d at 1175. "If the language of an arbitration agreement is clear and it is obvious that the dispute desired to be arbitrated falls within the scope of the arbitration clause, the court should compel arbitration." *Travis*, 335 Ill. App. 3d at 1175-76. "Likewise, if it is obvious that the issue sought to be arbitrated is not within the scope of the arbitration clause, the court should decide the arbitrability issue in favor of the opposing party, because no agreement to arbitrate the dispute exists." *Travis*, 335 Ill. App. 3d at 1175. "The parties are bound to submit to arbitration only those issues that they have agreed clearly to resolve through the arbitration mechanism, and a court should not extend an agreement by construction or implication." *Travis*, 335 Ill. App. 3d at 1175.

Additionally, Illinois courts have recognized that parties are free to agree to submit the question of arbitrability itself to arbitration. *Bahuriak v. Bill Kay Chrysler Plymouth, Inc.*, 337 Ill. App. 3d 714, 719 (2003).

As noted, the annual mooring application contained an arbitration clause, which provided:

"I also agree to resolve any controversy, dispute or claim against the Association, its employees, officers or directors or against, between or among any of its members or former members arising from or relating to any mooring permit, mooring, membership in the Association or operation or use of Wilmette Harbor, the Association or its facilities through mediation and/or arbitration in strict accordance with Article X of the By-Laws."

Article X of the bylaws provides, in relevant part:

"Section 1. *Mandatory Mediation.* Any controversy, dispute or claim against the Association, its employees, Officers or Directors or against, between or among any of its Members or former Members arising from or relating to any mooring permit, mooring, membership in the Association or operation or use of Wilmette Harbor, the Association or its facilities (hereinafter, collectively, 'Claim') shall be subject to mediation in an endeavor to settle the dispute in an amicable manner as a condition precedent to arbitration required hereunder in Section 2 ***.

Section 2. *Mandatory Arbitration.* Any Claim not resolved by mediation as set forth in Section 1 hereof (the 'Mediation Claim'), including disputes as to the scope and meaning of this Article and the arbitrability of any Claim, shall be decided by arbitration. A claim in arbitration must be initiated within ninety (90) calendar days after termination of the Mediation Claim pursuant to Rule—14 of the Mediation Rules."

■ Comparing the language of the association member plaintiffs' claims pertaining to their derivative suit against the association and its directors with the mediation/arbitration provision contained in the bylaws of the association, it is clear that the parties' dispute falls within the scope of the agreement to arbitrate disputes. All of the association member plaintiffs' claims in the derivative suit arise from or relate to mooring permits, mooring, membership in the association or operation or use of the harbor, the association or its facilities. Furthermore, it is clear that the question of arbitrability itself is subject to arbitration. Accordingly, the trial court did not err by dismissing the association member plaintiffs' claims pertaining to their derivative suit against the association and its directors and compelling mediation/arbitration.

Despite the foregoing, association member plaintiffs argue that they should have been permitted to conduct discovery to investigate the "threshold" issue of whether the association directors amended the bylaws in bad faith to include a mediation/arbitration provision to avoid suit by Heitzinger and others. Alternatively, association member

plaintiffs argue that they should have been allowed to amend the complaint so as to correct any deficiency warranting dismissal.

■ We first address the association member plaintiffs' argument that they should have been permitted to amend the complaint. Association member plaintiffs point us to the general rule that "[i]f a plaintiff can state a cause of action by amending its complaint, dismissal with prejudice should not be granted." *Buffa v. Haideri*, 362 Ill. App. 3d 532, 540 (2005). Although this is true in the context of a dismissal bearing on the facial deficiency of a complaint or in the context of summary judgment, plaintiff's argument is inapposite in the context of this case. As noted, plaintiffs' complaint was dismissed pursuant to section 2—619(a)(9) of the Code, which admits the legal sufficiency of a complaint but interposes some affirmative matter that prevents the lawsuit from going forward. *Travis*, 335 Ill. App. 3d at 1174. Here, the affirmative matter barring the derivative suit from going forward is the mediation/arbitration provision contained in the association bylaws. Accordingly, any amendment to the association member plaintiffs' claims pertaining to the derivative lawsuit would have yielded the same result.

■ We next address the association member plaintiffs' argument that they should have been permitted to conduct discovery to investigate the "threshold" issue of whether the association directors amended the bylaws to include a mediation/arbitration provision in bad faith. On December 20, 2006, the trial court entered an order allowing plaintiffs to explain the bases for additional discovery in their substantive response to the motion to dismiss.

Supreme Court Rule 191(b) specifies the procedure to be followed where additional discovery is needed in regard to section 2—619 motions for dismissal. The rule provides:

> "If the affidavit of either party contains a statement that any of the material facts which ought to appear in the affidavit are known only to persons whose affidavits affiant is unable to procure by reason of hostility or otherwise, naming the persons and showing why their affidavits cannot be procured and what affiant believes they would testify to if sworn, with his reasons for his belief, the court may make any order that may be just, either granting or refusing the motion, or granting a continuance to permit affidavits to be obtained, or for submitting interrogatories to or taking the depositions of any of the persons so named, or for producing papers or documents in the possession of these persons or furnishing sworn copies thereof." 134 Ill. 2d R. 191(b).

In this case, the association member plaintiffs never filed an affidavit in support of their request for additional discovery as required

by Illinois Supreme Court Rule 191(b). If the association member plaintiffs had reason to support the allegation that the board of directors changed the bylaws to defeat their claim in court, they needed to support their request for further discovery by the required affidavit to prove their claim. Consequently, the trial court properly denied the request for further discovery under Supreme Court Rule 191(b).

■ We next address the propriety of the trial court's ruling on the motion to compel mediation/arbitration and dismiss or stay the lawsuit in relation to the suit against defendant Uhlenhop. As noted, defendant Uhlenhop, an attorney, is an association member and acted as the association's legal counsel at all times relevant to the instant dispute. In their complaint, the association member plaintiffs alleged that defendant Uhlenhop negligently or purposefully advised the association to contest Heitzinger's request to access the association's books and records and received the majority of the $500,000 legal fees spent in opposing Heitzinger's request.

Defendant Uhlenhop contends that the claims against him fall within the mandatory mediation/arbitration provision of the association's bylaws because he is a member of the association. While this is true, defendant Uhlenhop is not being sued as a member of the association, but as the association's attorney (agent) for breach of fiduciary duties and for negligence (legal malpractice).

As noted, the mandatory mediation/arbitration provision states that mediation/arbitration is compelled in any dispute: "against the Association, its employees, Officers or Directors or against, between or among any of its Members or former Members." Noticeably absent from the list are the words "attorney" and/or "agent(s)." We find that the trial court erred by dismissing the association plaintiffs' claims against defendant Uhlenhop in his capacity as the association's attorney (agent), because (1) he is not a party to the contract to arbitrate disputes, and (2) the issue of whether defendant Uhlenhop breached his fiduciary duties or committed legal malpractice fall outside the scope of the arbitration clause. *Travis*, 335 Ill. App. 3d at 1175 (parties are bound to submit only those issues that they have agreed clearly to resolve through the arbitration mechanism to arbitration).

■ We now turn to plaintiff Greenberg's claims. As noted, Greenberg applied for a mooring at Wilmette harbor. His application and the related fee were returned to him, with a letter rejecting his application. Count VII of the complaint was pled as a class action claim and was directed against the association and the association directors and alleged breach of fiduciary duties for awarding moorings to "favored members" on a basis other than seniority. As noted, Greenberg sought to be declared the class representative.

The association and its directors moved to dismiss count VII pursuant to section 2—619 of the Code, claiming that Greenberg lacked standing to maintain the class action claim because he was never on the waiting list and Greenberg alleged no facts showing that the association or its board of directors owed him a duty that could support his claim; and pursuant to section 2—615 of the Code because Greenberg could not state a cause of action because he could not show that the denial of a spot on the mooring waiting list on the basis of seniority constituted a denial of an "economic necessity." *Treister v. American Academy of Orthopedic Surgeons*, 78 Ill. App. 3d 746, 755 (1979).

The trial court dismissed Greenberg's claims on two bases. The trial court determined that (1) Greenberg had no standing to bring suit because he was never on the mooring waiting list, and (2) Greenberg stated no cause of action because he failed to set forth any facts establishing that the association or its directors owed him a legal duty.

The essence of the standing inquiry is whether a litigant, either in an individual or representative capacity, is entitled to have the court decide the merits of a particular dispute or issue. *In re Estate of Wellman*, 174 Ill. 2d 335, 345 (1996). Standing in Illinois requires only some inquiry in fact to a legally cognizable interest. *Greer v. Illinois Housing Development Authority*, 122 Ill. 2d 462, 492 (1988).

In the context of a class action, if a purported representative plaintiff for a class action cannot maintain his individual claim against the defendant because of lack of standing or otherwise, then the class action claim cannot be maintained. *Landesman v. General Motors Corp.*, 72 Ill. 2d 44, 49 (1978). Accordingly, if a putative class action plaintiff has not suffered the injury that he alleges other members of the putative class have suffered, that purported plaintiff cannot represent the class.

In the instant case, Greenberg purported to bring a class action on behalf of all people on the waiting list for moorings at Wilmette harbor. However, Greenberg himself is not on the waiting list and has never been on the waiting list. Accordingly, Greenberg's claim, which is premised on being a member of the waiting list, must fail and his attempt to serve as a purported class representative on behalf of those on the waiting list, must likewise fail.

The trial court also based its dismissal on Greenberg's failure to state a cause of action pursuant to section 2—615 of the Code. Review of an order granting a motion to dismiss for failure to state a cause of action is *de novo*. *Treister*, 78 Ill. App. 3d at 757.

Illinois courts will not review a private association's denial of an application for membership or the benefits thereof unless what is ap-

plied for constitutes an "economic necessity." *Treister*, 78 Ill. App. 3d at 755. A party who fails to allege facts showing such economic necessity fails to state a claim. *Treister*, 78 Ill. App. 3d at 755.

In the instant case, Greenberg does not allege in the complaint that he has been denied an economic necessity. Accordingly, the trial court did not err by dismissing Greenberg's claim pursuant to section 2—615 of the Code.

## CONCLUSION

For the foregoing reasons, we affirm the dismissal of the association member plaintiffs' claims against the association and its directors. We also affirm the trial court's dismissal of plaintiff Greenberg's class action suit against the association. We however reverse the trial court's dismissal of association member plaintiffs' claims against defendant Uhlenhop for breach of fiduciary duties and negligence (legal malpractice).

Affirmed in part and reversed in part.

CAHILL, P.J., and WOLFSON, J., concur.