KELLY, Circuit Judge.
Defendants-Appellants Ultegra Financial, its CEO Muhammad Howard, (collectively Ultegra Defendants) and Clive Funding, Inc., appeal from the district court’s order denying their motion to compel arbitration. Ragab v. Howard, No. 15-cv-00220-WYD-MJW, 2015 WL 6662960 (D. Colo. Nov. 2, 2015). Our jurisdiction arises under 9 U.S.C. § 16(a)(1) and we affirm.
Background
In 2013, Mr. Ragab entered into a business relationship with the Ultegra Defendants. The parties had six agreements: a Consulting Agreement, a Membership Interest Purchase Agreement (Purchase Agreement), an Operating Agreement, an Assignment of Limited Liability Company Interest Agreement (Assignment Agreement), an Employment Agreement, and a Non Circumvention, Non Disclosure & Confidentiality Agreement (Non-Circumvention Agreement). Aplt. App. 113-50.
The agreements contain conflicting arbitration provisions. See Aplt. App. 167-87. Suffice it to say the conflicts involve (1) which rules will govern, (2) how the arbitrator will be selected, (3) the notice required to arbitrate, and (4) who would be entitled to attorneys’ fees and on what showing.[1]
In 2015, Mr. Ragab sued the Ultegra Defendants for misrepresentation and for violating several consumer credit repair statutes. The district court found that Mr. Ragab’s claims fell within the scope of all six agreements. Ragab, 2015 WL 6662960, at *4. The Ultegra Defendants moved to compel arbitration. Mr. Ragab added Defendant Clive Funding, Inc., which joined the Ultegra Defendants’ motion. The district court denied the motion to compel, concluding that there was no actual agreement to arbitrate as there was no meeting of the minds as to how claims that implicated the numerous agreements would be arbitrated.
Discussion
A. Motion to Compel Arbitration
We review a district court’s denial of a motion to compel arbitration de novo and apply the same legal standard as the district court. Armijo v. Prudential Ins. Co. *1137 of Am., 72 F.3d 793, 796 (10th Cir. 1995). We first address whether the inconsistencies across the six arbitration provisions indicate that the parties failed to have a meeting of the minds with respect to arbitration.
The Supreme Court has “long recognized and enforced a ‘liberal federal policy favoring arbitration agreements.’ ” Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002) (quoting Moses H. Cone Mem’l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)); see also 9 U.S.C. § 2 (“A written provision in any ... contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract- or transaction ... shall be valid, irrevocable,-and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.”). Therefore, “all doubts must be resolved in favor of arbitration.” Armijo, 72 F.3d at 798.
However, whether a party agreed to arbitration is a contract issue, meaning arbitration clauses are only valid if the parties intended to arbitrate. United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); see also Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ., 489 U.S. 468, 478, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989). No party cari’ be compelled to submit a dispute to arbitration without having previously agreed to so submit. United Steelworkers, 363 U.S. at 582, 80 S.Ct. 1347.
We apply state-law principles in deciding whether parties agreed to arbitrate. First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). Contract formation in Colorado requires evidence “that the parties agreed upon all essential terms.” I.M.A., Inc. v. Rocky Mountain Airways, Inc., 713 P.2d 882, 888 (Colo. 1986). A meeting of the minds is essential. Agritrack, Inc. v. DeJohn Housemoving, Inc., 25 P.3d 1187, 1192 (Colo. 2001). This can be demonstrated by the parties’ “conduct, their oral statements and their writings, and other evidence illuminating the circumstances surrounding the making of an agreement.” I.M.A., 713 P.2d at 888. Courts cannot create or enforce contracts between parties when the contract itself does not clearly demonstrate the parties’ intent. Newton Oil Co. v. Bockhold, 115 Colo. 510, 176 P.2d 904, 908 (1946).
No Colorado court[2] has addressed whether parties can be compelled to arbitrate given conflicting arbitration provisions, but other courts have. A New Jersey[3] court, for example, has concluded that irreconcilable differences across multiple arbitration provisions indicate that the parties did not agree to arbitrate. See, e.g., NAACP of Camden Cty. E. v. Foulke Mgmt. Corp., 421 N.J.Super. 404, 24 A.3d 777, 794 (N.J. Super. Ct. App. Div. 2011). At issue in NAACP were three agreements that each contained an arbitration provision. 24 A.3d at 781-82. The inconsis *1138 tencies across the six arbitration provisions in the case at hand almost mirror the irreconcilable portions of the arbitration provisions in NAACP, including the governing rules, the day by which the parties had to initiate arbitration, and which party was responsible for the arbitration fees. Id. at 794. Based on these inconsistencies, the court found that “the arbitration provisions ... [were] too plagued with confusing terms and inconsistencies to put a reasonable consumer on fair notice of their intended meaning.” Id. The Ultegra Defendants and Clive Funding, Inc. argue that NAACP is distinguishable because it involved an elderly woman who was not well educated. Id. at 781; Aplt. Br. at 24-25. This distinction, however, is unavailing. As the court in NAACP explained, even if the case involved a prudent purchaser— one who reads arbitration clauses—the conflicting terms would have prevented her from understanding “what the exact terns and conditions of that arbitration process would be.” 24 A.3d at 794. Relying on AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 344, 131 S.Ct. 1740, 179 L.Ed.2d 742 (2011), the court also recognized that “the FAA does not require an arbitration provision to be enforced if the provision is defective for reasons other than public policy or unconscionability.” Id. at 792. That is the case here.
Courts have granted motions to compel despite the existence of conflicting arbitration provisions when the contracts themselves provide the solution. For example, in Ex parte Palm Harbor Homes, Inc., 798 So.2d 656, 660 (Ala. 2001), the parties had executed several agreements each containing a different arbitration clause. Id, The court ordered arbitration according to the arbitration provision in the contract which contained a merger clause, conclud-mg that provision superceded the others.[4] Id. Here, however, there is no language in the six agreements that suggests one contract overrides the others, and we cannot arbitrarily pick one to enforce because doing so could violate the other five.
The Ultegra Defendants and Clive Funding further' argue that the court should compel arbitration here because courts have compelled arbitration based on a. single provision that merely requires arbitration, but does not spell out any other arbitration-related-terms. Aplt. Br. at 30-31; see Guthrie v. Barda, 188 Colo. 124, 533 P.2d 487, 487 (1975) (upholding an arbitration provision that only stated that claims “shall be submitted to binding arbitration”). But such a scenario is not relevant to this case, which involves multiple, specific, conflicting arbitration provisions, and not one general or vague arbitration clause.
Thus, the conflicting details in the multiple arbitration provisions indicate that there was no meeting of the minds with respect to arbitration. Such a conclusion is fully supported by contract formation requirements in Colorado. See I.M.A., 713 P.2d at 888 (explaining that contract formation requires that parties “agree[ ] upon all essential terms”).
B. Summary Trial
The Ultegra Defendants and Clive Funding also assert that the district court erred in not granting them a summary trial in deciding whether the parties agreed to arbitrate. Aplt. Br. at 44. Our review is de novo. See Howard v. Ferrellgas Partners, L.P., 748 F.3d 975, 978 (10th Cir. 2014).
*1139 When parties do not dispute the material facts surrounding an arbitration provision, then a district court, while viewing the facts most favorable to the non-moving party, can decide as a matter of law whether the parties actually agreed to arbitrate. Id. This standard is similar to the summary judgment standard. Id. When there is a genuine dispute of material facts, district courts must “proceed summarily to the trial” to resolve the factual disputes. 9 U.S.C. § 4.
The district court found that there were “ ‘genuine issues of material fact regarding the parties’ agreement,”’ and therefore denied the motion to compel arbitration. Ragab, 2015 WL 6662960, at *6 (quoting Hancock v. AT&T Co., 701 F.3d 1248, 1261 (10th Cir. 2012)). Be that as it may, there are no material factual disputes in this case that we can see: the parties agreed that they entered into six agreements, and do not dispute what the arbitration provisions say. What remained was an application of law: did the provisions conflict to such an extent that the parties could not have had a meeting of the minds? Armijo, 72 F.3d at 797. A summary trial on this issue was unnecessary.
AFFIRMED.

. For example:
(1) the Consulting Agreement states that arbitration will proceed under the rules of Colorado’s Uniform Arbitration Act of 1975, but the Operating Agreement, Membership Interest Purchase Agreement, and the Assignment of LLC Membership Interest all require application of the AAA Commercial Arbitration Rules, and the Confidentiality and Non-circumvention Agreement requires "Rules of the Colorado Court”;
(2) the Consulting Agreement states that an arbitrator will be chosen by consent of the parties, or appointed by a Colorado court if the parties cannot agree; whereas the Operating Agreement, Membership Interest Purchase Agreement, and the Assignment of LLC Membership Interest all require that the arbitrator be chosen by the American Arbitration Association (AAA);
(3) the Operating Agreement requires a thirty-day notice period prior to proceeding to arbitration, whereas the Membership Interest Purchase Agreement and the Assignment of LLC Membership Interest require only ten days; and
(4) the Consulting Agreement requires each party to pay its own arbitration costs and fees, but the Operating Agreement, Membership Interest Purchase Agreement, and the Assignment of LLC Membership Interest all permit the award of costs and fees to the prevailing party.

. The parties reference extensively Bellman v. i3Carbon, LLC, 563 Fed.Appx. 608 (10th Cir. 2014), an unpublished order and judgment. Bellman is not factually analogous to this case because it does not involve multiple conflicting arbitration provisions, but rather an arbitration provision, and a forum selection clause. Id at 610. We therefore do not find Bellman persuasive.

. Other jurisdictions have also found that conflicting terms in multiple arbitration provisions eliminate a duty to arbitrate. See, e.g., In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig., 838 F.Supp.2d 967, 992 (C.D. Cal. 2012); Basulto v. Hialeah Auto., 141 So.3d 1145, 1156 (Fla. 2014).

. “Typically, merger clauses are strong evidence that the parties did not intend to include terms not expressly incorporated into the document containing the clause.” Summit Contractors, Inc. v. Legacy Corner, L.L.C., 147 Fed.Appx. 798, 801 (10th Cir. 2005).