2026 IL App (1st) 251825
No. 1-25-1825
Opinion filed April 17, 2026

Sixth Division

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | |
|---|---|
| TODD BERMAN, Individually and on Behalf of Similarly Situated Individuals, <br><br>     Plaintiff-Appellee, <br><br> v. <br><br> NAPLETON'S SCHAUMBURG SUBARU, INC., an Illinois Corporation, and NAPLETON SCHAUMBURG MOTORS, LLC, <br><br>     Defendants-Appellants. | Appeal from the <br> Circuit Court of <br> Cook County. <br><br> No. 25 CH 01695 <br><br> Honorable <br> Neil H. Cohen, <br> Judge, presiding. |

_____

JUSTICE HYMAN delivered the judgment of the court, with opinion.
Presiding Justice C.A. Walker and Justice Pucinski concurred in the judgment and opinion.

**OPINION**

¶ 1      Todd Berman alleges Napleton Schaumburg Subaru, Inc. improperly charged him and other car purchasers for rust and corrosion prevention and then never applied it. Berman filed a class action complaint against Napleton's Schaumburg Subaru and its purported parent company, Napleton Schaumburg Motors, LLC, alleging fraud, breach of contract, and civil

conspiracy. Napleton moved to dismiss and compel arbitration, arguing that Berman signed two mandatory arbitration agreements.

¶ 2 The trial court held that provisions in the two agreements on the proper forum for arbitration, who decides arbitrability, and the parties' responsibilities for fees could not be reconciled and denied the motion.

¶ 3 Napleton argues the trial court erred because the parties agreed to arbitration and (i) conflicting provisions can be reconciled by reading the arbitration agreements together, (ii) the conflicts are not integral to the agreements, and (iii) the agreements delegated arbitrability questions to the arbitrator.

¶ 4 We affirm. The provisions of the arbitration agreements, prepared by Napleton, contain irreconcilable conflicts regarding integral provisions on the proper forum, who decides arbitrability, and the parties' responsibilities for arbitration fees.

¶ 5 BACKGROUND

¶ 6 Todd Berman purchased a pre-owned 2021 vehicle from Napleton Schaumburg Subaru. During negotiations, Napleton offered Berman a product, "Xzilion," that purportedly protects a vehicle's exterior from rust and corrosion and interior from stains, spills, and other wear and tear. Berman contends the parties agreed to a purchase price of $31,434, including the Xzilon treatment, but Napleton later added the $1,995 cost for Xzilion to the purchase price without his consent. He contends that Napleton's Retail Installment Contract has a cash price of $34,429, excluding taxes, which is $1,995 above the agreed price. Berman asserts he did not notice the additional fee because Napleton's salesperson pressured him to sign several documents. He also alleges Napleton never applied Xzilon to the vehicle.

1-25-1825

¶ 7    Two of the documents Berman signed in purchasing the vehicle and financing the transaction contained arbitration provisions. The Retail Installment Contract (RIC) states:

"ARBITRATION PROVISION

PLEASE REVIEW - IMPORTANT—AFFECTS YOUR LEGAL RIGHTS.

1. EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN YOU AND US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.

2. IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.

3. DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD. HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.

Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, any allegation of waiver of rights under this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us *** which arises out of or relates to your credit application, purchase or condition of this Vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at

your or our election, be resolved by neutral, binding arbitration and not by a court action. *** Any claim or dispute is to be arbitrated by a single arbitrator only on an individual basis and not as a plaintiff in a collective or representative action, or a class representative or member of a class on any class claim. The arbitrator may not preside over a consolidated, representative, class, collective, injunctive, or private attorney general action. You expressly waive any right you may have to arbitrate a consolidated, representative, class, collective, injunctive, or private attorney general action. You or we may choose the American Arbitration Association *** or National Arbitration and Mediation *** as the arbitration organization to conduct the arbitration. If you and we agree, you or we may choose a different arbitration organization.

* * *

Arbitrators shall be attorneys or retired judges and shall be selected pursuant to the applicable rules. *** We will pay the filing, administration, service, or case management fee and the arbitrator or hearing fee up to a maximum of $5,000, unless the law or the rules of the chosen arbitration organization require us to pay more. You and we will pay the filing, administration, service, or case management fee and the arbitrator or hearing fee over $5,000 in accordance with the rules and procedures of chosen arbitration organization.

* * *

You and we retain the right to seek remedies in small claims court for disputes or claims within that court's jurisdiction, unless such action is transferred, removed or appealed to a different court ***."

¶ 8 The Dispute Resolution Agreement (DRA) establishes a multi-step process. If the buyer and the dealership cannot resolve a dispute, they may pursue mediation through the Better Business Bureau (BBB) of Chicago. If mediation fails, "the Buyer or dealer can request binding arbitration through the BBB." Under the DRA, the buyer pays $100 in arbitration fees and the dealer covers the balance. The DRA incorporates the "purchase agreement." Berman also signed a General Waiver, acknowledging receipt of the DRA and agreeing to be bound by it.

¶ 9                                         Procedural History

¶ 10 Berman's first amended class action complaint against Napleton Schaumburg Subaru, Inc. (Napleton Subaru) and its parent company, Napleton Schaumburg Motors, LLC (Napleton Group) (collectively "Napleton"), claims that Napleton charges consumers for Xzilon treatment without their consent. Berman alleges common law fraud (count I), consumer fraud (count II), breach of contract (count III), and civil conspiracy (count IV).

¶ 11 Napleton moved to dismiss and compel arbitration under section 2-619(a)(9) of the Code of Civil Procedure, asserting that valid and enforceable arbitration agreements exist and that Berman's claim falls within their scope. 735 ILCS 5/2-619(a)(9) (West 2024).

¶ 12 Berman responded that (i) Napleton Group is not a party to or an intended third-party beneficiary of the agreements between him and Napleton Subaru and cannot enforce the arbitration provisions, (ii) the RIC's arbitration provision exempts his claim because it falls within small claims court jurisdiction, (iii) the arbitration provisions are unenforceable due to conflicting, vague, and ambiguous terms, and (iv) the arbitration provisions are substantively and procedurally unconscionable.

¶ 13	In reply, Napleton contended that (i) Napleton Group should not have been named as a party because it has no connection to Napleton Subaru and (ii) any ambiguities must be resolved in favor of arbitration, despite variations in terms.

¶ 14	The trial court denied the motion to dismiss without holding an evidentiary hearing. The court agreed with Berman that Napleton Group was not a party to the agreements and could not compel arbitration. The court rejected Berman's small claims court argument, noting that his class action complaint precludes the RIC's small claims court exemption.

¶ 15	As to enforceability, the trial court found that the RIC's arbitration provisions and the DRA conflict, rendering them ambiguous and unenforceable. Specifically, the court found that the RIC provides that the arbitrator decides the issue of arbitrability, whereas the DRA has no arbitrability provision, leaving the issue to the court. Because the issue cannot be decided by the arbitrator and the court, the documents cannot be reconciled.

¶ 16	Next, the trial court found the agreements' provisions regarding the forum could not be given effect. The DRA provides that the parties will exclusively use the dispute resolution procedure in that agreement, which requires arbitration before the BBB of Chicago. The RIC, however, provides for arbitration before the American Arbitration Association, National Arbitration and Mediation, or another arbitration organization by agreement.

¶ 17	Lastly, the court found that the DRA and RIC had conflicting provisions regarding fees. The DRA provides that the buyer pays the first $100 in arbitration fees and the dealer pays the remainder. The RIC provides that the dealer will pay up to $5,000 in arbitration fees, unless the law or rules of the arbitration organization require otherwise, and charges over $5,000 will be paid by the dealer and buyer, according to the rules of the chosen arbitration organization.

¶ 18    The trial court denied the motion because the conflicting provisions are unenforceable. The court did not address Berman's claims of unconscionability.

¶ 19                                ANALYSIS

¶ 20                            Standard of Review

¶ 21    A motion to compel arbitration as the exclusive remedy constitutes affirmative matter under section 2-619(a)(9) (*id.*). *Nord v. Residential Alternatives of Illinois, Inc.*, 2023 IL App (4th) 220669, ¶ 28. In ruling on the motion, the court must interpret the pleadings and supporting documents in the light most favorable to the nonmoving party. *Melena v. Anheuser-Busch, Inc.*, 219 Ill. 2d 135, 141 (2006). Generally, the standard of review for an order granting or denying a motion to compel arbitration is abuse of discretion. *Federal Signal Corp. v. SLC Technologies, Inc.*, 318 Ill. App. 3d 1101, 1105 (2001). But when, as here, the trial court decides without an evidentiary hearing and findings on factual issues, this court's standard of review is *de novo*. *Travis v. American Manufacturers Mutual Insurance Co.*, 335 Ill. App. 3d 1171, 1174 (2002).

¶ 22    Where a party seeks to compel arbitration, the sole issue is whether the parties agreed to arbitrate the dispute. *Griffith v. Wilmette Harbor Ass'n, Inc.*, 378 Ill. App. 3d 173, 180 (2007). " 'If the language of an arbitration agreement is clear and it is obvious that the dispute desired to be arbitrated falls within the scope of the arbitration clause, the court should compel arbitration.' " *Id.* (quoting *Travis*, 335 Ill. App. 3d at 1175-76). "On the other hand, where there is no valid arbitration agreement or where the parties' dispute does not fall within the scope of that agreement, the trial court may not compel it." *Travis*, 335 Ill. App. 3d at 1175.

¶ 23                          Enforceability of Arbitration Provisions

¶ 24        The Federal Arbitration Act (FAA) (9 U.S.C. § 1 *et seq.* (2018)) governs the enforceability of arbitration agreements in contracts that involve interstate commerce, as here. *Bovay v. Sears, Roebuck & C*o., 2013 IL App (1st) 120789, ¶ 28. The FAA requires federal and state courts to place written arbitration agreements on the same footing as other contracts. 9 U.S.C. § 2 (2018); *Kindred Nursing Centers L.P. v. Clark*, 581 U.S. 246, 248 (2017). The FAA compels arbitration if there is (i) an enforceable written agreement to arbitrate, (ii) a dispute within the scope of that agreement, and (iii) a refusal to arbitrate. *Zurich American Insurance Co. v. Watts Industries, Inc.*, 417 F.3d 682, 687 (7th Cir. 2005); 9 U.S.C. § 4 (2018). The federal policy favors arbitration, and once an enforceable arbitration contract is established, questions regarding the scope of arbitrable issues should be resolved in favor of arbitration. *Moses H. Cone Memorial Hospital v. Mercury Construction Cor*p., 460 U.S. 1, 24-25 (1983).

¶ 25        Nonetheless, courts have consistently held that an agreement to submit to arbitration involves contract law. *United Cable Television Corp. v. Northwest Illinois Cable Corp.*, 128 Ill. 2d 301, 306 (1989). Contract interpretation presents a question of law subject to *de novo* review. *Gallagher v. Lenart*, 226 Ill. 2d 208, 219 (2007). In interpreting the contract, courts give effect to the parties' intent by examining the contract as a whole, viewing each part in light of the others, and applying plain and ordinary meaning to unambiguous terms. *Id.* at 232-33.

¶ 26                                    Arbitration Forum

¶ 27        Napleton contends that reading the RIC and DRA together shows that the parties chose the BBB as the arbitration forum and that its rules eliminate potential conflicts. Napleton refers to the RIC's language, "You or we may choose the American Arbitration Association *** or

National Arbitration and Mediation *** as the arbitration organization to conduct the arbitration. If you and we agree, you or we may choose a different arbitration organization." The DRA provides that if the parties cannot resolve their dispute through mediation, "the Buyer or dealer can request binding arbitration through the BBB." Thus, according to Napleton, the parties agreed to "choose a different arbitration organization," the BBB of Chicago.

¶ 28    Berman maintains that Napleton forfeited this argument by not raising it in the trial court.

¶ 29    A reviewing court will not consider issues and arguments that the trial court neither presented nor considered. See *Jeanblanc v. Sweet*, 260 Ill. App. 3d 249, 254 (1994) (issues and arguments raised for first time on appeal are deemed forfeited). Napleton did not argue in the trial court that the parties selected the BBB as the arbitrator, nor did they provide the trial court with the BBB's rules; thus, they forfeited that argument. *Id.* Nonetheless, forfeiture does not bar this court from considering an issue or argument. See *Maniez v. Citibank, F.S.B.*, 404 Ill. App. 3d 941, 948 (2010) (principles of waiver and forfeiture are binding on parties but do not limit reviewing court's jurisdiction). So, we address it.

¶ 30    Although neither document incorporates the other, the parties signed them at the same time, for the same purpose and transaction. A long-standing principle of contract law states, "instruments executed at the same time, by the same parties, for the same purpose, and in the course of the same transaction are regarded as one contract and will be construed together." *Gallagher v. Lenart*, 226 Ill. 2d at 233. Another longstanding principle of contract construction provides that courts give meaning and effect to every provision of a contract, avoiding constructions that make any term surplusage. *Id.*

¶ 31    Napleton contends that the RIC's and DRA's forum provisions do not conflict, claiming that the parties followed the terms of the RIC by agreeing to the BBB as an alternative. But

Napleton's interpretation renders the RIC's forum language surplusage. Even more significant, the DRA states, "All parties agree to *exclusively* use this process to resolve disputes." (Emphasis added.) Reading the agreements together, as we must, is impossible because enforcing one nullifies the other. *Thompson v. Gordon*, 241 Ill. 2d 428, 442 (2011) (courts will not "interpret a contract in a manner that would nullify or render provisions meaningless").

¶ 32   While this issue alone warrants affirmance, we address Napleton's remaining arguments.

¶ 33         Decision of Arbitrability

¶ 34   Napleton contends the trial court erred on the issue of who decides arbitrability because the RIC provides that the arbitrator decides and the DRA is silent. According to Napleton, although courts presumptively decide "gateway" issues, the parties can contract to delegate that decision to the arbitrator. *Harry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 67-68, 69 (2019) (delegation depends on "clear and unmistakable" evidence in agreement (internal quotation marks omitted)).

¶ 35   Napleton maintains that the parties "clearly and unmistakably" delegated the threshold arbitrability questions to the arbitrator by arguing that, under the DRA, the parties agreed that the BBB's rules would control and that those rules delegate arbitrability determinations to the arbitrator consistent with the RIC. Because we have rejected Napleton's assertion that the parties reached a meeting of the minds on the forum and the rules that would govern, we agree with the trial court that the RIC cannot be reconciled with the DRA, which is silent on who decides arbitrability.

¶ 36                                    Arbitration Fees

¶ 37         As to the provisions in the two agreements on fee responsibilities, Napleton contends that the BBB has rules regarding fees, and because the parties agreed that the BBB as the proper arbitration forum, those rules control.

¶ 38         Again, we reject Napleton's contention—the parties did not unambiguously agree that the BBB's rules control when there was no meeting of the minds on the forum. Further, as noted, we cannot consider the substance of the BBB rules when they were never before the trial court and are not part of the record. Moreover, the fee provisions in the RIC and DRA differ greatly. At the time he signed the agreements, Berman could not have had any idea what his fee responsibility would be.

¶ 39                                 The Meaning of Integral

¶ 40         Napleton argues that the provisions concerning forum and fees are not integral to the parties' agreement to arbitrate, relying on *Carr v. Gateway, Inc.*, 241 Ill. 2d 15 (2011). In *Carr*, the arbitration clause provided that disputes "will be resolved exclusively and finally by arbitration administered by the National Arbitration Forum (NAF) and conducted under its rules." (Internal quotation marks omitted.) *Id.* at 20. The agreement further provided that the arbitrator may award reasonable costs and expenses, including attorneys' fees, to a party enforcing compliance with the dispute resolution provisions "in a forum other than NAF."

¶ 41         Considering the agreement as a whole, our supreme court concluded that the chosen arbitral forum was integral to the arbitration agreement. The provision designated NAF as the exclusive administrator of the arbitration and imposed a penalty if either party brought a dispute in another forum. Because the parties' agreement made NAF central to the arbitration

process, the trial court could not substitute a different arbitrator when NAF declined to administer the arbitration, and the arbitration clause was unenforceable. *Id.*

¶ 42   Napleton contends that, unlike in *Carr*, the RIC did not mandate a single arbitral forum but instead allowed several possible forums, demonstrating that the forum was not integral. That argument overlooks the DRA's effect. By designating BBB as the exclusive forum and imposing attorneys' fee consequences if a party files suit instead of arbitrating, the DRA, like the agreement in *Carr*, treats the chosen forum as integral to the arbitration arrangement. See *id.* at 33.

¶ 43   Moreover, as discussed, the RIC and DRA cannot be reconciled on other material points, including who decides arbitrability and the allocation of fees. Those conflicts provide independent grounds to deny Napleton's motion to compel arbitration.

¶ 44   Napleton's reliance on *Ragab v. Howard*, 841 F.3d 1134 (10th Cir. 2016), is unpersuasive as well. In *Ragab*, the Tenth Circuit considered a motion to compel arbitration in which the parties' interrelated agreements contained conflicting terms about how arbitration should proceed, including the rules governing arbitration, when the parties must initiate arbitration, and which party was responsible for the arbitration fees. *Id.* at 1137-38. The Tenth Circuit, applying Colorado law, held that there was no meeting of the minds because the parties had not agreed on all essential terms. *Id.* at 1138.

¶ 45   Napleton relies on the dissent in *Ragab*, in which then-Judge Gorsuch asserted that procedural details surrounding arbitration should be treated as nonessential terms to effectuate the parties' intent to arbitrate. *Id.* at 1139 (Gorsuch, J., dissenting). Judge Gorsuch further explained that the litigants were "parties to a commercial, not a consumer, transaction, with

contracts actively negotiated by both sides, not contracts of adhesion thrust upon the plaintiff." *Id.* at 1140.

¶ 46 Not only is this a dissent, but unlike in *Ragab*, this is a consumer transaction, not a commercial contract between sophisticated parties.

¶ 47 Notably, in *Ragab*, the majority relied on a New Jersey case, *NAACP of Camden County East v. Foulke Management Corp.*, 24 A.3d 777 (N.J. Super. Ct. App. Div. 2011). In the *NAACP* case, a consumer who was buying a new vehicle signed various documents provided by the dealership. *Id.* at 412-17. Several forms contained arbitration provisions with conflicting terms. *Id.* The court held the parties had no "meeting of the minds" on the issue of arbitration and, thus, no enforceable arbitration agreement because "[v]iewed in their totality, the arbitration provisions *** are too plagued with *** inconsistencies to put a reasonable consumer on fair notice of their intended meaning." *Id.* at 431. Likewise, the arbitration provisions in the RIC and the DRA are "too plagued with" differences, conflicts, and inconsistencies to provide consumers with fair notice of their arbitration rights and obligations.

¶ 48 Thus, we agree with the trial court's thoughtful analysis. And having affirmed the trial court's finding on enforceability, we need not address Berman's arguments concerning unconscionability.

¶ 49 Affirmed.

*Berman v. Napleton's Schaumburg Subaru, Inc.*, 2026 IL App (1st) 251825

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 25-CH-1695; the Hon. Neil H. Cohen, Judge, presiding. |
| **Attorneys for Appellant:** | Timothy D. Elliott, Ronald D. Menna Jr., and Christopher M. Miller, of Rathje Woodward, LLC, of Wheaton, for appellants. |
| **Attorneys for Appellee:** | Scott A. Morgan, of Morgan Law Firm, Ltd., John Sawin, of Sawin Law Ltd., and Eugene Y. Turin, Joseph M. Dunklin, and William Kingston, of McGuire Law, P.C., all of Chicago, for appellee. |