Filed 5/17/21  Chuc v. City Fibers CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| EDWIN ROGELIO XULU CHUC, | B299854 and B301008 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 18STCV04741) |
| v. | |
| CITY FIBERS, INC. et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County, Rafael A. Ongkeko, Judge.  Reversed and remanded.

Hill, Farrer & Burrill and E. Sean McLoughlin for Defendant and Appellant, City Fibers, Inc.

Rutan & Tucker, Steven J. Goon, Brandon L. Sylvia and Michael J. Rossiter for Defendants and Appellants,

PriorityWorkforce, Inc., Workforce Outsourcing, Inc. and Geneva Staffing, Inc.

Bibiyan Law Group and David D. Bibiyan for Plaintiff and Respondent.

_____

PriorityWorkforce, Inc., Workforce Outsourcing, Inc. and Geneva Staffing, Inc. (collectively Priority), related employment agencies that provide temporary workers to businesses throughout the United States, and City Fibers, Inc. appeal the order denying their motion to compel Edwin Rogelio Xulu Chuc (Xulu) to arbitrate his individual wage and hour claims, which Xulu filed as part of a putative class action lawsuit in superior court. Priority and City Fibers contend the court erred in concluding, because Xulu had signed two different arbitration agreements with conflicting provisions at about the same time, there was no meeting of the minds with respect to arbitration. We agree and reverse. Construing the two agreements together as required by Civil Code section 1642, an agreement to arbitrate employment-related disputes unquestionably exists, subject to any defenses to enforcement advanced by Xulu.

## FACTUAL AND PROCEDURAL BACKGROUND

Xulu began working on assignment in October 2016 as a machine operator for City Fibers, a recycling services operator and client of Priority, at City Fibers's Vernon facility. His employment was terminated on June 14, 2018.

1. *Xulu Signs Four Agreements To Arbitrate*

As part of the hiring process and in advance of any assignment, on September 26, 2016 PriorityWorkforce had Xulu sign two documents written in Spanish, a Mutual Agreement to Arbitrate Claims (Mutual Agreement) and an Employment At-

Will and Arbitration Agreement (Employment Agreement). The Mutual Agreement, but not the Employment Agreement, had a line for the signature of a company representative. Martha Rubio, human resources director at PriorityWorkforce, signed the agreement as Priority's representative.

For reasons not explained, Xulu was asked to, and did, sign another set of the same two documents on February 8, 2017 at Priority's offices. The February 8, 2017 Mutual Agreement was countersigned by a Priority representative, identified by Rubio as Caroline Tinoco, a PriorityWorkforce recruiter. The parties agree the text of the two sets of documents is identical and the February 8, 2017 documents superseded the September 26, 2016 set.

The Mutual Agreement provides for binding arbitration as the sole and exclusive remedy for all claims between the parties and defines claims to mean "all past, present, and future claims, disputes, and controversies of any nature in any way arising out of, relating to, or associated with Employee's employment with Employer." The Employment Agreement similarly provides for binding arbitration as "the sole and exclusive means to resolve all disputes that may arise out of or be related in any way to my employment, including but not limited to the termination of my employment and my compensation."

Xulu asserts he signed the documents on each occasion without reading or understanding them. He does not dispute it is his signature on the agreements.

## 2. *Xulu's Class Action and Representative Action Complaint*

On November 13, 2018 Xulu filed a complaint against City Fibers, PriorityWorkforce, Workforce Outsourcing and Geneva Staffing alleging individual and putative class claims for failure to pay overtime wages, failure to pay minimum wages, failure to provide meal periods, failure to provide rest periods, failure to pay wages due at termination, wage statement violations, failure to indemnify employees for necessary expenditures and unfair business practices. Xulu filed a first amended complaint on February 19, 2019 realleging the same eight individual and putative class causes of action in his original complaint and adding new representative causes of action for civil penalties under the Labor Code Private Attorneys General Act of 2004 (PAGA) (Lab. Code, § 2698 et seq.) for violations of a host of Labor Code provisions.

## 3. *The Demand To Arbitrate and Motion To Compel Arbitration*

Priority and City Fibers on January 3, 2019 submitted a demand for arbitration with JAMS Mediation, Arbitration, and ADR Services. The demand attached both the September 26, 2016 and February 8, 2017 iterations of the Employment Agreement signed by Xulu as the basis for arbitration. The demand did not refer to the provisions for arbitration in the parties' Mutual Agreement. After being served with the demand, Xulu through his attorney notified JAMS he was not a party to a valid or enforceable agreement to arbitrate.

On March 12, 2019 Priority filed in Xulu's superior court action a motion for an order compelling Xulu to submit his individual claims to binding arbitration. Priority's motion

4

attached as the basis for an order to arbitrate the September 26, 2016 and February 8, 2017 iterations of the Mutual Agreement signed by Xulu and countersigned by a PriorityWorkforce representative. Two days later City Fibers filed a petition to compel arbitration and a joinder in Priority's motion. City Fibers also relied on the two signed copies of the Mutual Agreement and, like Priority, omitted any reference to the arbitration provisions in the Employment Agreements signed by Xulu.

In his opposition to the motion and petition, filed April 5, 2019, Xulu first argued no enforceable agreement to arbitrate existed because he had signed two separate agreements to arbitrate on September 26, 2016 and again on February 8, 2017 with material differences, which made it impossible to know the terms of the parties' purported agreement. Specifically, Xulu contended there were contradictory provisions in the two forms relating to the extent to which the Federal Arbitration Act (FAA) or California law governed the procedures for arbitration, the method for selecting the arbitrator, the extent of permissible discovery, responsibility for payment of fees and costs and the location of the arbitration proceedings. In support of this argument Xulu relied upon *Ragab v. Howard* (10th Cir. 2016) 841 F.3d 1134, in which the court majority held, applying Colorado law regarding contract formation, where the parties during their business relationship had executed six agreements containing conflicting arbitration provisions, there was no meeting of the minds as to essential terms and, therefore, no enforceable agreement to arbitrate.

Xulu also argued in his opposition any purported agreement to arbitrate was voidable based on fraud; unconscionable, both procedurally and substantively; and, in any

event, inapplicable to nonsignatories City Fibers, Workforce Outsourcing and Geneva Staffing.[1]

In a reply memorandum Priority contended, although both documents were dated February 8, 2017, the Mutual Agreement was completed after the Employment Agreement and, because it contained an integration clause, was the operative agreement to arbitrate between the parties. As evidence for this assertion, Priority submitted a supplemental declaration from Rubio, who described Priority's standard practice with respect to having temporary workers execute arbitration agreements. "The Company's policy and practice when obtaining paperwork from contingent workers was and is to provide the workers with the required paperwork, and provide them ample time to review and sign the documents. Once the worker signs the documents, and returns them to the Company representative, Priority's representative reviews the paperwork to ensure all required signatures are present, and countersign[s] any documents as necessary." Because only the Mutual Agreement required both the employer's and the worker's signature and the general practice was for the employer to countersign the Mutual Agreement after the worker had finished all documents, Priority argued, the Mutual Agreement was necessarily completed after the Employment Agreement, which was effective on the worker's signature.

---

[1] The Employment Agreement defined PriorityWorkforce as "Company." The Mutual Agreement defined PriorityWorkforce as "Employer," and "Employer" together with "Employee" as "Parties." As discussed, the two Mutual Agreement forms were countersigned by employees of PriorityWorkforce.

In its reply Priority also argued, even if the agreements were signed concurrently, Xulu's agreement to arbitrate employment disputes was enforceable. Analyzing the two documents, Priority insisted they contained nearly identical terms and any minor differences were properly presented to the arbitrator for resolution.

After receiving the initial round of briefing, the superior court ordered supplemental briefing to address the interplay of the Employment Agreement and the Mutual Agreement and, in particular, Xulu's argument that, applying fundamental principles of contract formation, there had been no meeting of the minds.

4. *The Superior Court's Ruling*

The superior court denied Priority's motion, finding there had been no meeting of the minds regarding arbitration. The court first rejected Priority's argument the Mutual Agreement was the governing document because it was executed after the Employment Agreement, concluding Rubio's declaration concerning Priority's standard practice regarding countersigning documents was insufficient to carry Priority's burden on the timing issue. The court explained, "It is just as reasonable to infer that at the same meeting, all parties signed each document as needed, completing the process in one sitting. In that event, it makes no sense to ignore the existence of two competing agreements and make an arbitrary choice that the agreement the court chooses is exactly what the parties reasonably intended."

The court then ruled, because the agreements, "each of which contains an integration clause, have different terms in key areas which the court does not find to be a 'minor triviality' or relegated to 'minutiae,'" there had been no meeting of the minds

on all material points, as required by California law for the formation of a contract. Specifically, the court found material differences with respect to governing law, situs of the arbitration and selection of the arbitrator. The court also ruled, contrary to Xulu's position, there were no material differences between the arbitration provisions in the Mutual Agreement and Employment Agreement as to discovery or payment of costs.

The court denied City Fibers's petition to compel arbitration "[f]or the same reasons discussed above in connection with [Priority's motion] to compel arbitration."

## DISCUSSION

1. *Governing Law*

Code of Civil Procedure section 1281.2, first paragraph,[2] requires the superior court to order arbitration of a controversy "[o]n petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party to the agreement refuses to arbitrate that controversy . . . if it determines that an agreement to arbitrate the controversy exists." As the language of this section makes plain, the threshold question presented by every motion or petition to compel arbitration is whether an agreement to arbitrate exists. (*American Express Co. v. Italian Colors Restaurant* (2013) 570 U.S. 228, 233 [133 S.Ct. 2304, 186 L.Ed.2d 417] [it is an "overarching principle that arbitration is a matter of contract"]; *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.* (1985) 473 U.S. 614, 626 [105 S.Ct. 3346, 87 L.Ed.2d 444] ["the first task of a court asked to compel arbitration of a dispute

_____

[2] Statutory references are to this code unless otherwise stated.

8

is to determine whether the parties agreed to arbitrate that dispute"]; *Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 236 (*Pinnacle*) ["""a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit"""]; *Bautista v. Fantasy Activewear, Inc.* (2020) 52 Cal.App.5th 650, 656 ["[u]nder both federal and state law, the threshold question presented by a petition to compel arbitration is whether there is an agreement to arbitrate"; internal quotation marks and italics omitted]; see *Esparza v. Sand & Sea, Inc.* (2016) 2 Cal.App.5th 781, 787 ["[t]here is a strong public policy favoring contractual arbitration, but that policy does not extend to parties who have not agreed to arbitrate"].)

We use general contract interpretation principles to determine whether the parties have agreed to arbitrate a dispute (*Pinnacle, supra*, 55 Cal.4th at p. 236; *Mendez v. Mid-Wilshire Health Care Center* (2013) 220 Cal.App.4th 534, 541), while giving due regard to the federal and California policies favoring arbitration. (*Pinnacle,* at p. 236; see *OTO, L.L.C. v. Kho* (2019) 8 Cal.5th 111, 125 ["California law strongly favors arbitration"].) The basic goal of contract interpretation is to give effect to the parties' mutual intent at the time of contracting. (*Franco v. Greystone Ridge Condominium* (2019) 39 Cal.App.5th 221, 227.) In doing so, it is our responsibility to construe an apparent agreement between the parties so as to make it "lawful, operative, definite, reasonable, and capable of being carried into effect, if it can be done without violating the intention of the parties." (Civ. Code, § 1643; see *Rodriguez v. Barnett* (1959) 52 Cal.2d 154, 160; *County of Ventura v. City of Moorpark* (2018) 24 Cal.App.5th 377, 393.) In this regard, two agreements

relating to the same matter and executed at the same time should be construed together.  (Civ. Code, § 1642; see *Reigelsperger v. Siller* (2007) 40 Cal.4th 574, 580 [arbitration agreement and informed consent form read together to authorize arbitration for claims relating to future treatment by chiropractor].)

The failure to reach a meeting of the minds on all material points prevents the formation of a contract, including an agreement to arbitrate.  (See *Cheema v. L.S. Trucking, Inc.* (2019) 39 Cal.App.5th 1142, 1149; *Banner Entertainment, Inc. v. Superior Court* (1998) 62 Cal.App.4th 348, 359.)  "'Although the terms of a contract need not be stated in the minutest detail, it . . . must evidence a meeting of the minds upon the essential features of the agreement.'"  (*Cheema*, at p. 1149; accord, *Weddington Productions, Inc. v. Flick* (1998) 60 Cal.App.4th 793, 797 ["[i]f no meeting of the minds has occurred on the material terms of a contract, basic contract law provides that no contract formation has occurred"].)

2. *Burdens of Proof and Standard of Review*

The party seeking to compel arbitration bears the burden of proving by a preponderance of the evidence an agreement to arbitrate exists.  (*Pinnacle, supra*, 55 Cal.4th at p. 236; *Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 413; *Tiri v. Lucky Chances, Inc.* (2014) 226 Cal.App.4th 231, 240.)  Only when the agreement has been proved does the burden shift to the party resisting arbitration to establish a defense to the enforcement of the agreement, typically by alleging the agreement is void due to fraud in the execution, waiver or revocation.  (*Rosenthal*, at p. 413; accord, *Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 972; see *AT&T*

10

*Mobility LLC v. Concepcion* (2011) 563 U.S. 333, 339 [131 S.Ct. 1740, 179 L.Ed.2d 742] [section 2 of the Federal Arbitration Act "permits arbitration agreements to be declared unenforceable 'upon such grounds as exist at law or in equity for the revocation of any contract'"].)

When, as here, the court's order denying a motion to compel arbitration is based on the court's finding, based on disputed facts, that the moving party failed to carry its burden of proof, the question for the reviewing court as to that finding is whether it is erroneous as a matter of law. (See *Juen v. Alain Pinel Realtors, Inc.* (2019) 32 Cal.App.5th 972, 978-979 ["'where the issue on appeal turns on a failure of proof at trial, the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law'"]; *Almanor Lakeside Villas Owners Assn. v. Carson* (2016) 246 Cal.App.4th 761, 769 [same].) To the extent the order denying arbitration is based on undisputed facts, however, we review the denial de novo. (*OTO, L.L.C. v. Kho*, *supra*, 8 Cal.5th at p. 126; *Pinnacle*, *supra*, 55 Cal.4th at p. 236.) Similarly, "'[i]nterpreting a written document to determine whether it is an enforceable arbitration agreement is a question of law subject to de novo review when the parties do not offer conflicting extrinsic evidence regarding the document's meaning.'" (*Franco v. Greystone Ridge Condominium*, *supra*, 39 Cal.App.5th at p. 227; accord, *Avery v. Integrated Healthcare Holdings, Inc.* (2013) 218 Cal.App.4th 50, 60.)

11

3. *Priority's Evidence Did Not Establish the Mutual Agreement Was the Governing Document as a Matter of Law*

As discussed, as the parties seeking to compel arbitration, it was Priority and City Fibers's burden to prove the two-signature February 8, 2017 Mutual Agreement was the operative agreement to arbitrate because it was executed after the single-signature February 8, 2017 Employment Agreement, even though both were provided to Xulu at the same time.[3] There was no direct evidence on this point.

The trial court sustained Priority's objections to the entirety of Xulu's declaration in opposition to the motion to compel arbitration, which, in any event, did not address the timing issue. For its part, Priority provided a declaration from human resources director Rubio, who had not signed the February 8, 2017 Mutual Agreement, rather than from Tinoco. Rubio described the company's usual practice with regard to countersigning forms required from temporary employees seeking assignments.

The trial court, after noting that Priority had submitted the Employment Agreement to JAMS as the relevant arbitration agreement, found Rubio's declaration concerning general policy and practice insufficient to establish what had actually occurred with respect to the two February 8, 2017 documents at issue in this case, explaining it was just as likely the parties had signed

---

[3] The Mutual Agreement's integration clause provided, "This Agreement represents the complete agreement between Employee and Employer concerning the subject matter hereof and supersedes any prior discussions or representations relating to its subject matter."

both documents at a single meeting at the same time.[4]  Although
the court certainly could have come to the opposite conclusion,
Rubio's declaration was not so compelling "as to leave no room for
a judicial determination that it was insufficient" to support the
factual finding sought by Priority.  (See *Juen v. Alain Pinel
Realtors, Inc.*, *supra*, 32 Cal.App.5th at pp. 978-979 [superior
court's factual finding that no agreement to arbitrate existed
must be affirmed on appeal unless the moving party's evidence
"'was (1) "uncontradicted and unimpeached" and (2) "of such a
character and weight as to leave no room for a judicial
determination that it was insufficient to support a finding"'"];
see also *In re R.V.* (2015) 61 Cal.4th 181, 201 [where party fails to
meet its burden on an issue in the trial court, "the inquiry on
appeal is whether the weight and character of the evidence . . .
was such that the [trial] court could not reasonably reject it"].)

---

[4]      Priority disputes the superior court's statement it was
required to prove the existence of an agreement to arbitrate by a
preponderance of the evidence, insisting its burden "is only to
offer prima facie evidence of the written agreement," citing for
this proposition *Rosenthal v. Great Western Fin. Securities Corp.*,
*supra*, 14 Cal.4th 394 at page 413.  Priority seriously misreads
*Rosenthal*, which held (on the page Priority cites), "[W]hen a
petition to compel arbitration is filed and accompanied by prima
facie evidence of a written agreement to arbitrate the
controversy, the court itself must determine whether the
agreement exists and, if any defense to its enforcement is raised,
whether it is enforceable.  Because the existence of the agreement
is a statutory prerequisite to granting the petition, the petitioner
bears the burden of proving its existence by a preponderance of
the evidence." (*Ibid.*)

13

4. *When Construed Together, the Employment Agreement and the Mutual Agreement Create an Agreement To Arbitrate Employment Disputes*

Both the Employment Agreement and the Mutual Agreement expressly provide for arbitration of all of Xulu's employment-related claims. Nonetheless, the superior court concluded there was no meeting of the minds, and thus no contract formed, because of material differences in the terms of the two agreements with respect to the site of the arbitration, the method for selection of the arbitrator and governing law.[5]

Because the two agreements are between the same parties, relate to the same matter and were made as part of a single transaction, they must be construed together. (Civ. Code, § 1642 ["[s]everal contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together"].) When the provisions of the two agreements are interpreted together and with a view toward finding an operative contract (see Civ. Code, § 1643), there are no material conflicting terms that preclude finding a meeting of the minds and the existence of an agreement to arbitrate.

a. *The site of the arbitration*

The Employment Agreement provides that binding arbitration, as specified in the agreement, will be conducted "exclusively" under the FAA "in conformity with the procedures of the California Arbitration Act (Cal. Code Civ. Proc. Sec. 1280 et seq., including section 1283.05 and all of the Act's other mandatory and permissive rights to discovery)." The superior

---

[5] As discussed, the court rejected Xulu's argument there were also contradictory provisions with respect to permissible discovery and payment of costs.

14

court interpreted the in-conformity language to include section 1282.2, which specifies, "Unless the arbitration agreement otherwise provides, or unless the parties to the arbitration otherwise provide by agreement which is not contrary to the arbitration agreement as made or modified by all the parties thereto:  [¶] (a)(1) The neutral arbitrator shall appoint a time and place for the hearing . . . ."

The superior court agreed with Xulu that this provision of California law conflicted with the Mutual Agreement, which expressly requires the arbitration to take place in Orange County, California.  There is no conflict or material difference when these provisions are read together.  Section 1282.2 contemplates the parties, rather than a neutral arbitrator, may designate the location for the arbitration.  They did in the Mutual Agreement.

b. *Selection of arbitrator*

Both the Employment Agreement and the Mutual Agreement provide the arbitrator shall be mutually selected by the parties.  (The Employment Agreement adds that "the arbitrator selected shall be a retired California Superior Court Judge, or an otherwise qualified individual to whom the parties mutually agree.")  Nonetheless, the superior court found the procedures for selecting an arbitrator if the parties could not agree on one constituted a material difference preventing contract formation.  The Mutual Agreement refers the parties to the procedure provided by the FAA if they cannot agree on an arbitrator.  The Employment Agreement does not specify a procedure.  The superior court interpreted the in-conformity language in the Employment Agreement to include

15

section 1281.6, which provides a method for court appointment of an arbitrator in the absence of agreement by the parties.[6]

Once more this is a false conflict. The FAA provides, if the agreement specifies how an arbitrator is to be selected, "such method shall be followed." If there is no designated method or the method fails, then, upon application, the court will appoint an arbitrator. (9 U.S.C. § 5.)[7] To the extent the Employment

---

[6] Section 1281.6 provides in part, "In the absence of an agreed method, or if the agreed method fails or for any reason cannot be followed, . . . the court, on petition of a party to the arbitration agreement, shall appoint the arbitrator. [¶] When a petition is made to the court to appoint a neutral arbitrator, the court shall nominate five persons from lists of persons supplied jointly by the parties to the arbitration or obtained from a governmental agency concerned with arbitration or private disinterested association concerned with arbitration. The parties to the agreement who seek arbitration and against whom arbitration is sought may within five days of receipt of notice of the nominees from the court jointly select the arbitrator whether or not the arbitrator is among the nominees. [¶] If the parties fail to select an arbitrator within the five-day period, the court shall appoint the arbitrator from the nominees."

[7] Title 9 United States Code section 5 provides, "If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed; but if no method be provided therein, or if a method be provided and any party thereto shall fail to avail himself of such method, or if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire, or in filling a vacancy, then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire, as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein; and unless

16

Agreement incorporates Code of Civil Procedure section 1281.6's more detailed method for court-selection of the arbitrator, the provision in the FAA for use of any method agreed to by the parties mandates use of that process. And even if one looks to the FAA's requirement that the court select the arbitrator in the absence of agreement by the parties, nothing in the FAA precludes the court, when asked to appoint the arbitrator, from using the procedure described in section 1281.6. The terms of the two agreements, interpreted together, are fully compatible.

c. *Governing law*

As discussed, both the Employment Agreement and the Mutual Agreement provide they are to be governed by the FAA. The Employment Agreement additionally provides that mandatory and permissive rights of discovery under the California Arbitration Act, as well as California procedural law with respect to pleadings, summary judgment and evidence shall apply. None of those provisions of the Employment Agreement conflicts with the FAA as specified by the Mutual Agreement. (See *Volt Info. Sciences v. Leland Stanford Jr. U.* (1989) 489 U.S. 468, 479 [109 S.Ct. 1248, 103 L.Ed.2d 488] (*Volt*) ["Just as [the parties] may limit by contract the issues which they will arbitrate [citation], so too may they specify by contract the rules under which that arbitration will be conducted. Where, as here, the parties have agreed to abide by state rules of arbitration, enforcing those rules according to the terms of the agreement is fully consistent with the goals of the FAA"].)

---

otherwise provided in the agreement the arbitration shall be by a single arbitrator."

17

Xulu describes one other area of purported material conflict, not addressed by the superior court. Section 1281.2, he explains, authorizes the superior court to refuse to enforce a contractual arbitration provision if arbitration threatens to produce a result that may conflict with the outcome of related litigation not subject to arbitration. (See § 1281.2, subd. (c).) Because his PAGA claims are not subject to arbitration (*Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348, 384; see *ZB, N.A. v. Superior Court* (2019) 8 Cal.5th 175, 198), he asserts, the superior court would have discretion under the terms of the Employment Agreement to deny arbitration—a result prohibited by the FAA and, therefore, by the Mutual Agreement. (See *Mastick v. TD Ameritrade, Inc.* (2012) 209 Cal.App.4th 1258, 1263 [FAA "does not authorize courts to stay arbitration pending resolution of litigation, or to refuse to enforce a valid arbitration provision to avoid duplicative proceedings or conflicting rulings"]; *Valencia v. Smyth* (2010) 185 Cal.App.4th 153, 157 [FAA does not permit a trial court to stay or deny arbitration of all claims within the scope of an arbitration provision even if the action includes nonarbitrable claims by or against third parties]; see also *Volt*, *supra*, 489 U.S. at pp. 470, 477-479 [application of section 1281.2 to stay arbitration would not undermine the goals and policies of, and is not preempted by, the FAA in a case where the parties have agreed that their arbitration agreement will be governed by California law].)

First, whatever potential impact section 1281.2 might have in other cases, it cannot create a material conflict here. Section 1281.2, subdivision (c), authorizes the court to deny arbitration if a party to the arbitration agreement is also a party to a pending court action "with a third party arising out of the

18

same transaction or series of related transactions and there is a possibility of conflicting rulings on a common issue of law or fact." There is no third-party litigation here. Section 1281.2, subdivision (c), even if otherwise applicable, would not authorize denial of Priority's motion to compel arbitration.

Section 1281.2, seventh paragraph, in contrast to section 1281.2, subdivision (c), authorizes the court to delay an order for arbitration, not to avoid conflicting rulings, but when determination of nonarbitrable claims pending between the parties to an arbitration agreement "may make the arbitration unnecessary." (See *Acquire II, Ltd. v. Colton Real Estate Group* (2013) 213 Cal.App.4th 959, 977; *RN Solution, Inc. v. Catholic Healthcare West* (2008) 165 Cal.App.4th 1511, 1521-1522.) Resolution of the nonarbitrable PAGA claims asserted by Xulu, however, will still leave undetermined a number of the individual Labor Code wage-and-hour claims he has asserted, as well as his cause of action for unfair business practices. That is, trial of the PAGA claims will not make the arbitration unnecessary. Accordingly, section 1281.2, seventh paragraph, would not authorize a stay of arbitration here.

Second, and more fundamentally, Xulu is simply incorrect in asserting section 1281.2's provisions for denying or delaying arbitration could be invoked under the Employment Agreement, creating a material conflict with the terms of the Mutual Agreement. As Xulu acknowledges and the superior court ruled, the Mutual Agreement unambiguously provides it is to be governed and enforced under the FAA. Although the Employment Agreement expressly provides certain state procedural rules apply to arbitration proceedings, it, too, is to be

enforced under the FAA, eliminating the court's authority under section 1281.2 to deny or delay arbitration.

Our colleagues in Division Four of this court, interpreting language substantially similar to that in the Employment Agreement, addressed this question in *Victrola 89, LLC v. Jaman Properties 8 LLC* (2020) 46 Cal.App.5th 337 (*Victrola 89*). At issue in that case was whether the superior court had discretion to deny a motion to compel arbitration pursuant to section 1281.2, subdivision (c), because only one of the defendants named in the complaint had agreed to arbitrate and there was a possibility of conflicting rulings on a common issue of fact or law regarding the defendants' liability. (*Victrola 89, supra*, 46 Cal.App.5th at p. 345.) The arbitration agreement provided in part, "'The Parties shall have the right to discovery in accordance with Code of Civil Procedure § 1283.05. In all other respects, the arbitration shall be conducted in accordance with Title 9 of Part 3 of the Code of Civil Procedure. . . . Enforcement of this agreement to arbitrate shall be governed by the Federal Arbitration Act.'" (*Id.* at p. 343, boldface deleted.)

Construing this language de novo in the absence of any conflicting extrinsic evidence, the court of appeal held, because the parties had expressly provided the FAA governed enforcement of the arbitration agreement, the superior court erred in applying section 1281.2, subdivision (c), to deny the motion to compel arbitration. (*Victrola 89, supra*, 46 Cal.App.5th at pp. 345-346.)[8] The references to California law in the

_____

[8] The court of appeal rejected the argument the parties intended only that enforcement of the arbitration award would be governed by the FAA: "'Enforcement of this agreement to arbitrate' does not and cannot mean 'Enforcement of the

arbitration provision did not affect this conclusion. As the court explained, "The parties were free to agree that discovery would be conducted in accordance with Code of Civil Procedure section 1283.05. Their choice does little to inform us about what law the parties intended to apply when deciding whether the arbitration agreement should be enforced. Similarly, a directive that arbitration shall be 'conducted' in accordance with the [California Arbitration Act] in all other respects has no bearing on the law that should be used to determine whether arbitration is required." (*Id.* at p. 349; accord, *Warren-Guthrie v. Health Net* (2000) 84 Cal.App.4th 804, 816 ["[a]greement to apply California contractual arbitration law is expressly limited to that law which bears on how the arbitration shall be conducted, as distinguished from agreeing that the plan shall be governed by California law for all purposes, including the determination . . . whether or not arbitration is required"], disapproved on another ground in *Cronus Investments, Inc. v. Concierge Services* (2005) 35 Cal.4th 376, 393, fn. 8.)

Here, the Employment Agreement provided employment-related disputes would be "submitted to and determined exclusively by binding arbitration under the Federal Arbitration Act," while the arbitration proceedings themselves would be conducted "in conformity with" the California Arbitration Act. For the reasons discussed in *Victrola 89*, this express choice-of-law provision requiring submission of disputes to arbitration under the FAA mandates federal law, not California law, be used to determine whether arbitration is required. (Cf. *Cronus*

---

arbitration award that may result from an arbitration undertaken pursuant to this agreement to arbitrate.'" (*Victrola 89*, *supra*, 46 Cal.App.5th at p. 348.)

21

*Investments, Inc. v. Concierge Services*, *supra*, 35 Cal.4th at pp. 387, 394 [language in arbitration clause providing "[t]his agreement shall be construed and enforced in accordance with and governed by the laws of the State of California" generally incorporates California law, including the California Arbitration Act, and permits a stay of arbitration proceedings pursuant to section 1281.2].) The superior court would not be authorized to deny or delay arbitration under section 1281.2 under either the Mutual Agreement or the Employment Agreement. There is no conflict between the two agreements on this point.

In sum, the Employment Agreement and the Mutual Agreement do not contain "different terms in key areas" as argued by Xulu and found by the superior court. The parties plainly agreed to arbitrate their employment-related disputes, and the procedures for conducting such an arbitration are clear. There was a meeting of the minds sufficient to form a contract. Whether there are defenses to enforcement of the agreement formed, as Xulu contends, must be addressed by the superior court in the first instance.

## DISPOSITION

The order denying the motion to compel arbitration is reversed.  On remand the court is directed to consider the points raised in Xulu's opposition to the motion to compel arbitration other than his argument no agreement to arbitrate exists and to enter a new ruling on the motion.  City Services, PriorityWorkforce, Workforce Outsourcing and Geneva Staffing are to recover their costs on appeal.


PERLUSS, P. J.


We concur:


FEUER, J.


McCORMICK, J.*

---

\*      Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.