# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-23-00735-CV

---

**Design Tech Homes of Texas, LLC, Appellant**

**v.**

**John Siemens and Vashti Siemens (as Co-Trustees of The John Siemens and Vashti Siemens Living Revocable Trust), Appellees**

---

### FROM THE 22ND DISTRICT COURT OF COMAL COUNTY
### NO. C2022-2039A, THE HONORABLE DIB WALDRIP, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

Design Tech Homes of Texas, LLC (Design Tech) brings this interlocutory appeal from the trial court's order denying Design Tech's motion to compel arbitration and motion to stay and abate proceedings. *See* Tex. Civ. Prac. & Rem. Code §§ 51.016, 171.098(a)(1); *see also* 9 U.S.C. § 16. Because we conclude that the trial court abused its discretion when it denied Design Tech's motion to compel arbitration, we reverse the trial court's order and remand the case to the trial court.

## BACKGROUND

**The Agreement**

In January 2021, the John and Vashti Siemens Living Revocable Trust (the Trust) entered into an agreement (the Agreement) with Design Tech Homes, L.P. to construct a home.

Design Tech signed the Agreement as the general partner of Design Tech Homes, L.P., and the Siemenses signed the agreement as trustees of the Trust.

The Agreement, which refers to Design Tech Homes, L.P. as the "Contractor" and the Trust as the "Owner," contains a dispute resolution provision that provides in relevant part:

5.5 Dispute Resolution

A. Arbitration and Mediation: Any claim, dispute or cause of action, between Owner and Contractor, whether based in contract, tort, or otherwise, but excluding any and all matters, disputes or claims arising out of or relating to copyright, trademark or patent, also known as intellectual property law, shall be resolved in accordance with and by following the dispute resolution guidelines set forth in the: (a) ACES Limited Warranty; (b) Federal Arbitration Act (Title 9 of the United States Code); and/or (c) Texas Arbitration Act. Any demand or claim for arbitration shall be submitted to the American Arbitration Association (using the Construction Industry Arbitration Rules and Mediation Procedures) or JAMS arbitration and mediation services. Such claims, disputes or causes of action, include, but are not limited to, those arising out of or relating to: (i) this Agreement, including the subject matter, breach or termination hereof; (ii) the design, construction, preparation, maintenance or repair, of the Property (including the Home); (iii) marketing or sale of the Home; (iv) any representations or warranties, express or implied, relating to the Agreement or the Home; (v) any transaction, event or relationship between Owner and Contractor; (vi) any violations of any statute, including, but not limited to the Texas Deceptive Trade Practices-Consumer Protection Act, or similar Act in any other State; and/or (vii) any other rights, obligations or agreements between Owner and Contractor ("the Dispute"). Owner and Contractor agree that under no circumstances shall either party request or seek class certification or class arbitration with respect to any claims arising out of or in any way connected with this Agreement, including the matters set forth above. Further, Owner and Contractor expressly agree that the arbitrator(s) selected hereunder shall not be entitled or empowered to order or grant class arbitration nor render an award to any class of claimants. Owner and Contractor require that the arbitrator provide a reasoned award, same being an award that explains the factual and legal bases for making the award. After commencement of an arbitration proceeding, either party may require that the Dispute be submitted to mediation prior to the final arbitration hearing. If the Dispute is not resolved by mediation, then the arbitration proceeding shall continue to conclusion. Judgment upon the arbitration award or decision may be confirmed, entered and enforced in any court having jurisdiction, subject to appeal only in the event of the arbitrator's misapplication of the law, no evidence to support the award, or such other

2

grounds for appeal of arbitration awards that exist by applicable law. This arbitration provision shall survive termination of this Agreement. Nothing herein shall excuse Owner from participating in and complying with any applicable provision of the Texas Property Code.

B. <u>Forum and Venue</u>: Any mediation or arbitration proceeding shall be commenced, administered, and venue shall be in Houston, Texas or such other venue as the parties may agree at the time of the dispute or, unless otherwise required by law. Any arbitrator or mediator must have at least five (5) years of experience serving as an arbitrator or mediator and shall have technical expertise and knowledge appropriate to the subject matter of the Dispute.

. . . .

E. <u>Other Disputes Resolution Procedures</u>: The procedures set forth herein shall in no way be construed to limit or otherwise affect any inspection and dispute resolution provisions prescribed in any applicable statute. One of the benefits to binding arbitration is that the dispute remains confidential for all parties. With that benefit in mind, Owner and Contractor agree to not make statements about the other through computer-mediated tools . . . ("Electronic Media") which: (i) contain confidential or private information; (ii) are libelous, harassing, abusive, obscene, vulgar, or inappropriate with respect to race, gender, sexuality, ethnicity or other intrinsic characteristic; (iii) are unrelated to the Home or this Agreement; or (iv) are clearly false or misleading. A violation of this agreement will entitle the non-defaulting party to receive from the defaulting party liquidated damages in the amount of Five Thousand and No/100 Dollars for each violation. The parties agree that the determination of actual damages would be difficult if not impossible to determine and this amount is a fair and reasonable estimate of such damages. In the event of a violation of this provision, the non-defaulting [party] will be entitled to place a response on the Electronic Media used by the defaulting party.

The Agreement further provides that it is subject to the Texas Residential Construction Liability Act (RCLA), *see* Tex. Prop. Code §§ 27.001–.009, and identifies the ACES Warranty as the applicable home warranty:

4.6 Warranties/Limitation on Contractor's Liability

A. <u>The ACES Warranty</u>. The Owner has received a specimen of the ACES Contractor Limited Warranty and the accompanying Performance Standards (the "Limited Home Warranty"). Owner further acknowledges that Owner has been afforded the opportunity to read and approve a sample of said Limited Home

Warranty prior to execution of this Agreement, or agreed to waive that opportunity. The Owner also acknowledges that the Limited Home Warranty provides for an alternative dispute resolution procedure for any disagreements or misunderstandings that may arise between the Owner and the Contractor which relate to or otherwise involve the Limited Home Warranty or otherwise relates to the construction of the Home (referred to as "Disputes"). As provided in the Limited Home Warranty, any Disputes or claims shall be submitted to the American Construction & Education Services, Inc. ("ACES") for administration and resolution in accordance with the procedures prescribed by ACES. This is in no way intended to limit, restrict or otherwise affect any other dispute resolution mechanisms or procedures provided in this Agreement or as may be provided under applicable law.

The Agreement also provides for the prevailing party to recover attorney's fees and other fees "in connection with a dispute that is resolved through arbitration or litigation."

**The Underlying Litigation**

On November 22, 2022, Design Tech filed suit against the Siemenses as co-trustees of the Trust. Design Tech sought to foreclose on its mechanic's and materialman's lien against the property and to recover damages for alleged misapplication of construction trust funds pursuant to Chapter 162 of the Texas Property Code, violations of the Texas Prompt Payment Act pursuant to Chapter 28 of the Texas Property Code, breach of contract, quantum meruit in the alternative, and attorney's fees. Design Tech alleged that the outstanding amount that it was owed "for the labor and materials furnished to the Property" was $30,987.19.

On December 6, 2022, counsel for the Siemenses sent a demand letter to Design Tech that provided notice of their construction-defect claims pursuant to the requirements of the RCLA, *see* Tex. Prop. Code § 27.004 (requiring 60-day notice of alleged construction defects before initiating action against contractor and providing procedure and deadlines for contractor to inspect property and make offer of settlement), and notice of other claims pursuant to the requirements of the Deceptive Trade Practices-Consumer Protection Act (DTPA), *see* Tex. Bus.

4

& Com. Code §§ 17.41–.63, .505 (requiring 60-day notice of complaints before filing suit and providing procedure for defendant to inspect goods).

On April 28, 2023, the Siemenses filed an original answer, counterclaim, and third-party petition against Design Tech Homes, Ltd d/b/a Design Tech Homes, L.P. and d/b/a DTH Remodeling and d/b/a Design Tech Homes (the Design Tech parties).[1] They sought declaratory relief and damages, and their allegations against the Design Tech parties included misrepresentations, defective construction, deviations from the agreed plans without authority, wrongful abandonment of the construction project, violations of the DTPA and Construction Trust Fund Act, *see* Tex. Prop. Code §§ 162.001–.033, .031 (addressing misapplication of trust funds), and filing of a fraudulent lien, *see* Tex. Civ. Prac. & Rem. Code §§ 12.001–.007. They also sought to recover attorney's fees.

On July 19, 2023, the Siemenses filed a motion to set the case on the jury docket and for entry of a docket-control order, and a hearing on their motion was set for August 24. On July 28, Design Tech filed a motion to compel arbitration, motion to abate and stay proceedings, and response to the Siemenses' motion to set the case for trial and entry of a docket-control order. Design Tech represented that the parties participated in mediation on June 8 that was recessed to gather additional information but that the mediation had not resumed and asserted that it filed the underlying suit because it was "necessary to properly enforce an arbitration award in the future," that it had not waived the arbitration clause in the Agreement, that the arbitration clause is binding and enforceable under Texas law, and that the Siemenses' counterclaims fall within its scope. Design Tech authenticated the Agreement with an affidavit by Mike Feigin, who is the Chief Executive Officer of Design Tech Homes, L.P.; the President of Design Tech;

---

[1] The record reflects that the Siemenses were served with citation in April 2023.

and the person who signed the Agreement as the representative of Design Tech. Also on July 28, the Design Tech parties filed an original answer to the counterclaims and third-party petition subject to the motion to compel arbitration and stay proceedings.

The parties filed briefing as to Design Tech's motion to compel arbitration. The Siemenses argued that Design Tech had failed to meet its burden of proving a valid and enforceable agreement to arbitrate because it had failed to prove a "'meeting of the minds' with respect to the subject matter and essential terms of the alleged agreement to arbitrate." The Siemenses contended that the arbitration provisions in the Agreement were ambiguous and that the Agreement "contains conflicting and irreconcilable dispute resolution alternatives." They also argued that Design Tech had waived its right to compel arbitration because it "consciously chose to sue the Siemens[es]" "almost a year ago," seeking a court order to foreclose on the Siemenses' property and other affirmative relief, and that they were not required to show prejudice to establish that Design Tech had waived its right to arbitrate. They further sought alternative relief if the trial court determined that the parties agreed to arbitrate. They requested that the trial court select and appoint an arbitrator and declare that the Agreement's venue provision was unenforceable.

In its briefing, Design Tech relied on the Agreement itself and the December 2022 demand letter from the Siemenses' counsel to argue that the Siemenses acknowledged the existence of a valid and enforceable arbitration provision in the Agreement. The Siemenses' counsel stated in the letter, "The construction agreement contains language regarding dispute resolution requiring mediation and/or arbitration, so any contemplated litigation would have to either be mediation or arbitration." Design Tech also argued that the Siemenses conceded that they had not been prejudiced and represented that the Siemenses appeared in the case three

6

months prior to Design Tech's motion to compel arbitration and that no discovery had been conducted between the parties. Finally, Design Tech argued that the Siemenses were estopped from resisting the arbitration clause and objected to the trial court appointing the arbitrator. Design Tech represented that "the American Arbitration Association (AAA) has specific 'Construction Industry Arbitration Rules and Mediation Procedures'" that include a "fair process" for appointing an arbitrator and provided the website where those procedures were posted.

Following a hearing, the trial court denied Design Tech's motion to compel arbitration and motion to abate and stay proceedings without stating the grounds for the denial. This interlocutory appeal followed.

## ANALYSIS

In two issues, Design Tech challenges the trial court's denial of its motions to compel arbitration and to abate and stay proceedings. Because our resolution of Design Tech's first issue is dispositive, we limit our analysis to that issue. *See* Tex. R. App. P. 47.1.[2]

---

[2] In this interlocutory appeal, we also question our jurisdiction over Design Tech's second issue, which challenges the trial court's denial of Design Tech's motion to abate and stay proceedings. *See* Tex. Civ. Prac. & Rem. Code §§ 51.016 (generally authorizing interlocutory appeal from denial of motion to compel as would be permitted under Federal Arbitration Act (FAA)), 171.098(a)(1) (authorizing interlocutory appeal from order denying application to compel arbitration); *see also* 9 U.S.C. § 16 (authorizing appeal from order denying motion to compel arbitration); *In re Nguyen*, No. 14-22-00913-CV, 2023 Tex. App. LEXIS 5051, at *9 (Tex. App.—Houston [14th Dist.] July 13, 2023, orig. proceeding) (mem. op.) ("Because there is no provision allowing for the interlocutory appeal of the denial of a motion to abate pending arbitration, mandamus is the appropriate remedy to correct a clear abuse of discretion."); *Walker Sand, Inc. v. Baytown Asphalt Materials, Ltd.*, 95 S.W.3d 511, 512–13 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (dismissing appeal for lack of jurisdiction of order denying request to stay proceedings to permit arbitration).

**Standards of Review**

We review a trial court's denial of a motion to compel arbitration for abuse of discretion. *Henry v. Cash Biz, LP*, 551 S.W.3d 111, 115 (Tex. 2018) (citing *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 642–43 (Tex. 2009) (orig. proceeding)). "We defer to the trial court's factual determinations if they are supported by evidence but review its legal determinations de novo." *Id.* A trial court abuses its discretion if it acts "without reference to any guiding rules and principles." *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). Further, "[a] trial court has no discretion in determining what the law is, which law governs, or how to apply the law." *U-Haul Co. of Tex. v. Toro*, No. 01-22-00883-CV, 2023 Tex. App. LEXIS 8906, at *18 (Tex. App.—Houston [1st Dist.] Nov. 30, 2023, no pet.) (mem. op.) (citing *Okorafor v. Uncle Sam & Assocs., Inc.*, 295 S.W.3d 27, 38 (Tex. App.—Houston [1st Dist.] 2009, pet. denied)).

"When an order denying a motion to compel arbitration does not state the grounds for the denial, we must affirm the order if any of the grounds asserted in the trial court for denying the motion are meritorious." *Id.* (citing *In re Estate of Guerrero*, 465 S.W.3d 693, 701 (Tex. App.—Houston [14th Dist.] 2015, pet. denied)). And "[w]here, as here, the trial court makes no written findings of fact or conclusions of law in support of its ruling, all facts necessary to support the judgment and supported by the evidence are implied." *Constant v. Gillespie*, No. 05-20-00734-CV, 2022 Tex. App. LEXIS 3415, at *12 (Tex. App.—Dallas May 18, 2022, no pet.) (mem. op.) (citing *Redi-Mix, LLC v. Martinez*, No. 05-17-01347-CV, 2018 Tex. App. LEXIS 5683, at *4 (Tex. App.—Dallas July 25, 2018, no pet.) (mem. op.)).

"Whether parties have committed their disputes to arbitration is a gateway matter for the court to decide and is 'controlled by state law governing the validity, revocability, and

enforceability of contracts generally.'" *Bonsmara Nat. Beef Co. v. Hart of Tex. Cattle Feeders, LLC*, 603 S.W.3d 385, 397 (Tex. 2020) (quoting *Jody James Farms, JV v. Altman Grp.*, 547 S.W.3d 624, 631 & n.12 (Tex. 2018)); *see Constant*, 2022 Tex. App. LEXIS 3415, at *14 ("Arbitration agreements are creatures of contract."). Under Texas law, our review of contract-construction questions, including whether a contract is ambiguous, is de novo, and we "apply general common law principles governing the formation and construction of contracts to determine whether there is an agreement to arbitrate." *High Valley Homes, Inc. v. Fudge*, No. 03-01-00726-CV, 2003 Tex. App. LEXIS 3273, at *5–6, *13–14 (Tex. App.—Austin Apr. 17, 2003, no pet.) (mem. op.); *see Coker v. Coker*, 650 S.W.2d 391, 394 (Tex. 1983) (determining whether contract is ambiguous is "question of law for the court to decide by looking at the contract as a whole in light of the circumstances present when the contract was entered"). We enforce the language of an unambiguous agreement "according to its plain meaning unless such a reading would defeat the intentions of the parties." *High Valley Homes*, 2003 Tex. App. LEXIS 3273 at *14. And in construing contracts, we "must examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless." *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003).

"A party seeking to compel arbitration must first establish that a valid arbitration agreement exists and that the claims are within the agreement's scope." *Bonsmara Nat. Beef Co.*, 603 S.W.3d at 397 (citing *In re Rubiola*, 334 S.W.3d 220, 224 (Tex. 2011) (orig. proceeding)); *see Baby Dolls Topless Saloons, Inc. v. Sotero*, 642 S.W.3d 583, 585–86 (Tex. 2022) (per curiam) (requiring party seeking to compel arbitration to establish existence of valid arbitration agreement and dispute within scope of agreement); *In re Weekley Homes, L.P.*,

180 S.W.3d 127, 130 (Tex. 2005) (orig. proceeding) (explaining that determination of whether valid agreement to arbitrate is made by "summary proceedings with burden on the moving party to show a valid agreement to arbitrate" (citing *J.M. Davidson*, 128 S.W.3d at 227)). "If the party seeking arbitration carries its initial burden, the burden then shifts to the party resisting arbitration to present evidence on its defenses to the arbitration agreement." *Murdock v. Trisun Healthcare, LLC*, No. 03-10-00711-CV, 2013 Tex. App. LEXIS 5638, at *7 (Tex. App.—Austin May 9, 2013, pet. denied) (mem. op.) (citing *J.M. Davidson*, 128 S.W.3d at 227); *see TBC-The Boring Co. v. 304 Constr., LLC*, No. 03-23-00394-CV, 2024 Tex. App. LEXIS 3441, at *20–21 (Tex. App.—Austin May 17, 2024, no pet.) (mem. op.).

"Whether a valid and enforceable arbitration agreement exists between [the parties] is a legal question subject to de novo review." *Murdock*, 2013 Tex. App. LEXIS 5638, at *4; *see Yazdani-Beioky v. Sharifan*, 550 S.W.3d 808, 823 (Tex. App.—Houston [14th Dist.] 2018, pet. denied) ("Whether an agreement is legally enforceable is a question of law."). "A trial court that refuses to compel arbitration under a valid and enforceable arbitration agreement has clearly abused its discretion." *In re Whataburger Rests. LLC*, 645 S.W.3d 188, 194 (Tex. 2022) (quoting *In re 24R, Inc.*, 324 S.W.3d 564, 566 (Tex. 2010) (orig. proceeding)); *see In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 753–54 (Tex. 2001) (orig. proceeding) (stating that when trial court concludes that arbitration agreement encompasses claims and party opposing arbitration has failed to prove defenses, trial court "has no discretion but to compel arbitration").

**Existence of Arbitration Agreement**

To the extent that the trial court denied Design Tech's motion to compel arbitration because it determined that Design Tech did not establish the existence of a valid and

10

enforceable agreement to arbitrate, Design Tech contends that it met its burden by offering the authenticated Agreement and that the Siemenses did not meet their burden to prove a formation defense to the Agreement's arbitration provisions.

In response to Design Tech's motion to compel, the Siemenses did not offer evidence or challenge the validity or enforceability of the Agreement as a whole. Their challenge was limited to the Agreement's arbitration provisions specifically. *See RSL Funding, LLC v. Newsome*, 569 S.W.3d 116, 124 (Tex. 2018) (explaining that party can challenge validity of arbitration provision specifically). The Siemenses also did not challenge that their asserted claims would be subject to the Agreement's arbitration provisions if those provisions are valid and enforceable, and before this Court, they do not contend that Design Tech was the wrong party to compel arbitration pursuant to the Agreement.[3] The Siemenses argue that Design Tech

---

[3] To the extent that the trial court denied Design Tech's motion to compel arbitration on the ground that Design Tech was the wrong party to compel arbitration, the trial court abused its discretion. Mike Feigin, who is the Chief Executive Officer of Design Tech Homes, L.P., and the President of Design Tech, signed the Agreement as the representative of Design Tech in its capacity as the general partner of Design Tech Homes, L.P., and the Siemenses alleged that Design Tech was an agent or employee of Design Tech Homes, L.P. and asserted the same claims against the Design Tech parties, including breach of the Agreement, which contains the arbitration provisions. *See SEB, Inc. v. Campbell*, No. 03-10-00375-CV, 2011 Tex. App. LEXIS 1588, at *13 (Tex. App.—Austin Mar. 2, 2011, no pet.) (mem. op.) ("When the principal is bound by the terms of a valid arbitration agreement, its agents, employees, and representatives are also covered by the agreement."); *see also Dargahi v. Handa*, No. 03-17-00386-CV, 2017 Tex. App. LEXIS 10373, at *7–8 (Tex. App.—Austin Nov. 8, 2017, no pet.) (mem. op.) ("Parties to an arbitration agreement may not evade arbitration through artful pleading, such as by naming individual agents of the party to the arbitration clause and suing them in their individual capacity." (citing *In re Merrill Lynch Tr. Co. FSB*, 235 S.W.3d 185, 188 (Tex. 2007))).

failed to prove the existence of an enforceable agreement to submit disputes to binding arbitration because it did not establish that the parties reached a meeting of the minds to do so.[4]

By presenting the authenticated Agreement that was signed by the Siemenses and contained the arbitration provisions, however, Design Tech "offered prima facie evidence" of the parties' agreement to arbitrate. *See Texas First Rentals, LLC v. Montage Dev. Co.*, No. 04-22-00429-CV, 2023 Tex. App. LEXIS 6216, at \*12–14 (Tex. App.—San Antonio Aug. 16, 2023, no pet.) (mem. op.) (explaining that "evidentiary standards for a motion to compel arbitration are the same as for a motion for summary judgment" and that "party can satisfy its evidentiary burden to prove the existence of an arbitration agreement by submitting an authenticated copy of an agreement containing an arbitration clause"). Thus, the burden shifted to the Siemenses "to provide arguments and evidence as to why the arbitration agreement has a formation defect" or to prove some other defense to arbitration. *See Ridge Nat. Res., L.L.C. v. Double Eagle Royalty, L.P.*, 564 S.W.3d 105, 118 (Tex. App.—El Paso 2018, no pet.)

---

[4] Assuming without deciding that we can consider arguments that the Siemenses raise for the first time on appeal, they argue that the trial court did not abuse its discretion in denying the motion to compel because Design Tech materially breached the agreement to arbitrate by filing suit with "libelous" allegations that the Siemenses misapplied trust funds with intent to defraud, depriving them of the benefit of confidentiality and excusing the Siemenses from any obligation to arbitrate. *See Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195, 196 (Tex. 2004) (stating contract principle that when party materially breaches contract, other party is discharged or excused from further performance (citing *Hernandez v. Gulf Grp. Lloyds*, 875 S.W.2d 691, 692 (Tex. 1994))); *see also* Tex. Prop. Code § 162.032(b) (stating that trustee who misapplies trust funds with intent to defraud commits third-degree felony). As support, the Siemenses rely on *Brown v. Dillard's, Inc.*, 430 F.3d 1004 (9th Cir. 2005), and *Tri-Star Petroleum Co. v. Tipperary Corp.*, 107 S.W.3d 607 (Tex. App.—El Paso 2003, pet. denied). Neither case is factually analogous to the situation here. *See Brown*, 430 F.3d at 1006, 1011 (concluding that employer materially breached arbitration agreement when it refused to participate in arbitration with former employee who attempted to initiate arbitration proceedings against it); *Tri-Star Petroleum*, 107 S.W.3d at 612–16 (determining that misconduct during arbitration proceeding may constitute material breach of agreement). We also observe that statements made in pleadings cannot serve as a basis for a defamation claim. *See Landry's, Inc. v. Animal Legal Def. Fund*, 631 S.W.3d 40, 46 (Tex. 2021).

12

(explaining that once party moving for arbitration offers "prima facie evidence of an arbitration agreement's existence, the burden shifts to the party contesting the existence of an arbitration agreement to provide arguments and evidence as to why the arbitration agreement has a formation defect so as to create a triable issue that would defeat summary disposition"); *see also* Tex. Civ. Prac. & Rem. Code § 171.021(b) (stating that when party opposing arbitration denies existence of agreement, "court shall summarily determine that issue"); *In re FirstMerit Bank*, 52 S.W.3d at 756 (stating that by suing based on contract, parties subjected themselves to contract's terms including arbitration provision and that unless parties prove defense to arbitration, arbitration was required). In this context, we turn to our analysis of the parties' arguments about whether the arbitration provisions in the Agreement are valid and enforceable.

**Meeting of the Minds**

The Siemenses argue that there was no valid agreement to submit disputes to binding arbitration because "the parties never had a meeting of the minds on the specific ADR mechanism and procedures, if any, to be pursued if a dispute arose relating to the construction of the Home." They argue that the Agreement's ADR provisions are "conflicting, ambiguous, and irreconcilable" and that "[n]othing in the Agreement prioritizes one ADR method over another, gives one party the sole right to select a particular ADR method, or waives the right to seek a judicial remedy." *See In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 781 (Tex. 2006) (orig. proceeding) ("A contract is ambiguous only if it is subject to 'two or more reasonable interpretations after applying the pertinent rules of construction.'" (quoting *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex. 1996))); *see also Barrow-Shaver Res. Co. v. Carrizo Oil & Gas, Inc.*, 590 S.W.3d 471, 479 (Tex. 2019)

13

(explaining that contract's language is not ambiguous if it can be "given a certain or definite legal meaning or interpretation").

"A meeting of the minds is necessary to form a binding contract." *David J. Sacks, P.C. v. Haden*, 266 S.W.3d 447, 450 (Tex. 2008); *see Karns v. Jalapeno Tree Holdings, L.L.C.*, 459 S.W.3d 683, 692 (Tex. App.—El Paso 2015, pet. denied) (explaining that meeting of minds is component of both offer and acceptance measured by what parties said and did and not on parties' subjective state of mind). However, "[t]he failure to meet minds on a term of the contract is only fatal to a contract if the term was essential or material." *Ridge Nat. Res.*, 564 S.W.3d at 124; *see Houston Indep. Sch. Dist. v. Simpson*, No. 03-12-00145-CV, 2013 Tex. App. LEXIS 13581, at *11–12 (Tex. App.—Austin Nov. 1, 2013, no pet.) (mem. op.) (stating that elements to establish enforceable contract include meeting of minds "with respect to the subject matter of the agreement and all its essential terms").

"[E]ssential or material terms are those that parties would reasonably regard as vitally important elements of their bargain." *Potcinske v. McDonald Prop. Invs., Ltd.*, 245 S.W.3d 526, 531 (Tex. App.—Houston [1st Dist.] 2007, no pet.). "Each contract should be considered separately to determine its material terms." *T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex. 1992). To be enforceable, a contract must address its essential and material terms with a reasonable degree of certainty and definiteness so that a court can understand and enforce the parties' obligations. *Fischer v. CTMI, L.L.C.*, 479 S.W.3d 231, 237 (Tex. 2016). When an agreement leaves open material matters for future agreement that never occur, it is an agreement to agree and is not binding on the parties. *Id.* "The material terms of a contract are determined on a case-by-case basis, with each contract considered separately." *Yazdani-Beioky*, 550 S.W.3d at 823 (citing *Fischer*, 479 S.W.3d at 237).

14

Although there is "no particular form or language required for a valid arbitration agreement," "it must reflect the parties' intent to submit their dispute to arbitrators and to be bound by that decision." *High Valley Homes*, 2003 Tex. App. LEXIS 3273, at *14. "The parties must have expressed their agreement to arbitrate in clear terms," *id.*, but the precise procedures governing the arbitration of the parties' disputes generally are not essential and material terms, *see Stride Staffing v. Holloway*, No. 05-14-00811-CV, 2015 Tex. App. LEXIS 7846, at *3–5 (Tex. App.—Dallas July 29, 2015, pet. denied) (mem. op.).

For example, when considering an arbitration provision that specified that legal disputes "would be resolved through arbitration under the provisions of the Federal Arbitration Act," the Dallas Court of Appeals explained that an agreement may leave open nonessential terms for future determination and concluded that "the language of the agreement clearly reflects that the intent of the parties was to arbitrate disputes." *Id.* The court observed that the party who was opposing arbitration "has directed us to no language in the agreement, or any other circumstances, that would suggest the manner in which the arbitration was conducted was material to the parties" and that the FAA provides a mechanism for selecting an arbitrator when an agreement does not do so. *Id.* The court also disagreed with the opposing party's "suggestion that it was 'impossible' for the trial court to enforce the agreement because it did not provide for who would arbitrate, where they would arbitrate, and other details," explaining "[t]o enforce the agreement as written, the trial court needed only to grant the motion to compel." *Id.* at *4–5; *see Bonded Builders Homewarranty Ass'n of Tex., Inc. v. Smith*, 488 S.W.3d 468, 478–79 (Tex. App.—Dallas 2016, no pet.) (explaining that essence of arbitration is submission of controversy to third party and concluding that identity of arbitration company, specific arbitrators, rules, or costs were not essential terms of arbitration agreement).

15

In contrast, when the parties' agreement contains directly conflicting provisions as to the parties' agreement to arbitrate, the agreement may be unenforceable because there was no meeting of the minds between the parties to arbitrate. *See Links Constr. v. United Structures of Am.*, No. 14-20-00723-CV, 2022 Tex. App. LEXIS 2405, at *9–11 (Tex. App.—Houston [14th Dist.] Apr. 14, 2022, no pet.) (mem. op.); *see also O'Shaughnessy v. Young Living Essential Oils, L.C.*, 810 F. App'x 308, 311–12 (5th Cir. 2020) (determining under Utah law that there was no meeting of minds to arbitrate where there was direct conflict without limiting language between provision requiring disputes to be resolved by arbitration and provision that "[a]ny legal action concerning this Agreement will be brought in the state and federal courts located in Salt Lake City, Utah").[5]

For example, in the context of determining whether the parties had agreed to arbitrate based on provisions contained in a purchase order and a separate quotation and contract, the Fourteenth Court of Appeals concluded that there was no meeting of the minds between the parties on the essential terms of their arbitration agreement because enforcing one clause would nullify another. *Links*, 2022 Tex. App. LEXIS 2405, at *1–2, *10–11. The clause in the purchase order required any dispute to be submitted to arbitration, and the clause in the quotation provided that one of the parties had the "sole option" to elect for arbitration or some other

---

[5] The Siemenses also rely on *Ragab v. Howard*, 841 F.3d 1134, 1136–38 (10th Cir. 2016), to support their position that the arbitration provisions in the Agreement are not enforceable because they conflict, but that case applied Colorado law and is factually distinguishable. In that case, the Tenth Circuit decided that there was no meeting of the minds with respect to arbitration because there were six separate agreements with contradictory arbitration provisions. *Id.* In contrast, in this case, the parties' agreement to arbitrate is contained in the Agreement. Further, the Tenth Circuit recognized that conflicting arbitration provisions may be enforceable when "the contracts themselves provide the solution." *Id.* at 1138.

dispute resolution method. *Id.* at *2. The court explained, "These clauses cannot be read together without nullifying one or the other on its essential terms." *Id.* at *11.

In this case, the Siemenses contend that the language in the following sections of the Agreement provides conflicting and irreconcilable dispute resolution alternatives: (i) Section 4.6A, addressing the home warranty from American Construction & Education Services, Inc. (ACES); (ii) Section 5.5A, addressing arbitration and mediation; (iii) Section 5.5E, addressing other dispute resolution procedures; (iv) Sections 5.5B, addressing forum and venue; and (v) Section 5.4, addressing the recovery of attorney's fees. We will address each section in turn.

*Section 4.6A*

Section 4.6A identifies the ACES warranty as the applicable limited home warranty and then provides information about the warranty. It states that Owner "acknowledges" that the warranty contains "an alternative dispute resolution procedure for any disagreements or misunderstandings that may arise between the Owner and Contractor" concerning the warranty or the home's construction and that the warranty provides that disputes "shall be submitted to [ACES] for administration and resolution in accordance with the procedures prescribed by ACES." But, in response to Design Tech's motion to compel and its evidence of the Agreement, the Siemenses did not offer a copy of the warranty or other evidence that would support that the procedures in the warranty irreconcilably conflict with an essential term of the arbitration provisions in the Agreement. *See Ridge Nat. Res.*, 564 S.W.3d at 118 (explaining that once party moving for arbitration offers "prima facie evidence of an arbitration agreement's existence," burden shifts to party contesting existence of arbitration agreement to provide arguments and evidence as to why arbitration agreement has formation defect); *see also Lucchese Boot Co.*

*v. Rodriguez*, 473 S.W.3d 373, 387 (Tex. App.—El Paso 2015, no pet.) (concluding that movant "presented evidence of an unambiguous, presumptively valid arbitration agreement that explicitly embraces" claims and that non-movant did not present contrary evidence and observing that copy of other arbitration agreement was not in record so that courts could conclude that claims were subject to that agreement).

Further, even if procedures in the warranty would conflict with essential terms of the arbitration provisions in the Agreement, Section 4.6A expressly provides in its last sentence, which follows the sentence requiring covered disputes to be submitted to ACES, "This is in no way intended to limit, restrict or otherwise affect any other dispute resolution mechanisms or procedures provided in this Agreement or as may be provided under applicable law." Thus, to the extent that the procedures in the warranty would conflict with the arbitration provisions in the Agreement, the arbitration provisions would control. *See Chambers v. O'Quinn*, 305 S.W.3d 141, 150 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (explaining that in interpreting contract, court should harmonize provisions that appear to conflict when possible to reflect parties' intentions); *see also G.T. Leach Builders, LLC v. Sapphire V.P., L.P.*, 458 S.W.3d 502, 532 (Tex. 2015) (concluding that agreement was unambiguous that contained provision that specified that disputes "shall be decided by arbitration" and conflicting provision that specified contract did not contain provision for mandatory arbitration because of phrase "[n]otwithstanding any provision to the contrary" in latter provision).

Reading the plain language of Section 4.6A, we conclude that the section is not ambiguous and that on its face, it does not irreconcilably conflict with an essential term of the arbitration provisions in the Agreement.

*Section 5.5A*

As to Section 5.5A, the arbitration-and-mediation provision, the Siemenses rely on the use of "and/or" in the sentence addressing the applicable dispute resolution guidelines and the section's choice of two alternative arbitration services:

> Any claim, dispute or cause of action, between Owner and Contractor, whether based in contract, tort, or otherwise, but excluding any and all matters, disputes or claims arising out of or relating to copyright, trademark or patent, also known as intellectual property law, shall be resolved in accordance with and by following the dispute resolution guidelines set forth in the: (a) ACES Limited Warranty; (b) Federal Arbitration Act (Title 9 of the United States Code); **and/or** (c) Texas Arbitration Act. Any demand or claim for arbitration shall be submitted to the American Arbitration Association (using the Construction Industry Arbitration Rules and Mediation Procedures) **or** JAMS arbitration and mediation services.

As we observed above, the Siemenses did not offer a copy of the ACES Limited Home Warranty or other evidence, and the application of both the FAA and TAA to an agreement to arbitrate does not create an irreconcilable conflict as to an essential term. *See Texas First Rentals*, 2023 Tex. App. LEXIS 6216, at *9 (stating that "FAA and TAA are not mutually exclusive" and that FAA only preempts TAA in situation in which TAA would preclude enforcement of arbitration agreement that FAA would enforce). Thus, even if applicable procedures for arbitration were essential terms of an agreement to arbitrate, the Siemenses did not establish an irreconcilable conflict between the specified procedures referenced in this section.[6]

---

[6] The Siemenses have not advanced an argument as to how the procedures in the home warranty, the FAA, and the TAA irreconcilably conflict and thus preclude arbitration in this case. Further, to the extent that the Agreement allows the party seeking to compel arbitration to choose between the AAA and JAMS, the Siemenses have not advanced an argument as to how any material differences between the two services' procedures should preclude arbitration. Design Tech provided the trial court with the website where the AAA Construction Industry

19

We also observe that the parties used the word "shall" in this section when referring to their agreement to arbitrate. *See In re Varilease Fin., Inc.*, No. 09-16-00271-CV, 2016 Tex. App. LEXIS 9838, at *6 (Tex. App.—Beaumont Sept. 1, 2016, orig. proceeding) (mem. op.) ("When 'shall' is used in contracts, it is generally mandatory and operates to impose a duty." (citing *Lesikar v. Moon*, 237 S.W.3d 361, 367 (Tex. App.—Houston [14th Dist.] 2007, pet. denied))). And the parties provided further details about the arbitration of their disputes, including that (i) "the arbitrator provide a reasoned award, same being an award that explains the factual and legal bases for making the award"; (ii) the "arbitration proceedings shall continue to conclusion" when the parties' dispute is not resolved by mediation; and (iii) a court with jurisdiction is authorized to confirm, enter, and enforce a judgment upon the arbitration award or decision. *See High Valley Homes*, 2003 Tex. App. LEXIS 3273, at *8, *15–16 & n.4 (concluding that parties agreed to binding arbitration by reading subject paragraph "as whole," relying on definition and parties' use of term "arbitration," and declining to ignore significant portions of paragraph). Reading this section "as a whole," we conclude that it is not ambiguous and that on its face, it does not contain an irreconcilable conflict as to an essential term of the parties' agreement to arbitrate. *See id.*; *see also Lucchese Boot Co.*, 473 S.W.3d at 386 (considering whether agreement to arbitrate was ambiguous on face and concluding that it was not).

*Section 5.5E*

The first sentence of Section 5.5E, which addresses "Other Dispute Resolution Procedures," states:

---

Arbitration Rules and Mediation Procedures are posted. *See* https://www.adr.org/construction (lasted visited Dec. 16, 2024).

20

> The procedures set forth herein shall in no way be construed to limit or otherwise affect any inspection and dispute resolution provisions prescribed in any applicable statute.

The Siemenses argue that this sentence "negates any binding force in these directives" to arbitrate disputes based on their interpretation that the "applicable statutes" are statutes with inspection and dispute resolution components, statutes with inspection components, *or* statutes with dispute resolution components, including dispute resolution provisions in Chapters 151 and 154 of the Texas Civil Practice and Remedies Code, some of which contain ADR methods that are not binding on the parties. *See* Tex. Civ. Prac. & Rem. Code §§ 151.001–.013 (providing for trial by special judge with agreement of parties), 154.023 (providing for mediation), .024 (providing for mini-trial with agreement of parties), .025 (providing for non-binding moderated settlement conference), .026 (providing for non-binding summary jury trial), .027 (providing for binding or non-binding arbitration).

Based on their interpretation of this sentence, the Siemenses argue that the trial court was correct to recognize that the arbitration provisions in the Agreement "could *not* be enforced without nullifying" these provisions and that these "provisions cannot be 'harmonized' to provide that binding arbitration is the *exclusive* ADR method for resolving the parties' disputes." As support for this interpretation, the Siemenses rely on Design Tech's decision to file suit and seek a judicial remedy as evidence showing that the parties did not agree to binding arbitration as the exclusive method for resolving their disputes, arguing that, "[a]t most, the Agreement's ADR provisions constitute an unenforceable 'agreement to agree.'" *See Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 846 (Tex. 2000) ("It is well settled law that when an agreement leaves material matters open for future adjustment and agreement

21

that never occur, it is not binding upon the parties and merely constitutes an agreement to agree.").

But the plain meaning of the first sentence in Section 5.5E when viewed in the context of the whole Agreement—a residential-construction contract—makes clear that the referenced *applicable* statutes are those that have both inspection *and* dispute resolution components. *See In re Whataburger Rests.*, 645 S.W.3d at 194–95 (interpreting arbitration provisions "under traditional contract principles" and explaining that "plain language controls," words must be construed in context in which they are used, and provisions must be considered with reference to "whole instrument"). This interpretation is consistent with the Agreement's reference in other sections to the applicability of the RCLA, which includes both inspection and dispute resolution provisions. *See, e.g.*, Tex. Prop. Code §§ 27.004 (requiring notice by claimant to builder, opportunity for builder to inspect and cure defect, and timetable for offer of settlement), .0041 (providing for mediation). The Siemenses' signatures appear next to an all-caps and bold notice of RCLA's applicability and its requirements to provide notice to the Contractor before initiating arbitration or filing suit, and if requested by the contractor, an opportunity to inspect and cure. Section 5.5A also provides: "Nothing herein shall excuse Owner from participating in and complying with any applicable provision of the Texas Property Code."

As support for their position that the use of "and" between "inspection" and "dispute resolution provisions" is disjunctive, rather than conjunctive, the Siemenses cite *Trammell Crow Residential Co. v. American Protection Insurance*, 574 F. App'x 513 (5th Cir. 2014), but the reasoning in that case is consistent with our analysis here. As the Fifth Circuit explained,

22

Ordinarily the words "and" and "or," are in no sense interchangeable terms, but, on the contrary, are used in the structure of language for purposes entirely variant, the former being strictly of a conjunctive, the latter, of a disjunctive, nature. Nevertheless, in order to effectuate the intention of the parties to an instrument, a testator, or a legislature, as the case may be, the word "and" is sometimes construed to mean "or." This construction, however, is never resorted to except for strong reasons and the words should never be so construed unless the context favors the conversion; as where it must be done in order to effectuate the manifest intention of the user; and where not to do so would be to render the meaning ambiguous, or result in an absurdity; or would be tantamount to a refusal to correct a mistake.

*Id.* at 518 (quoting *Board of Ins. Comm'rs of Tex. v. Guardian Life Ins.*, 180 S.W.2d 906, 908 (Tex. 1944)). Applying this reasoning to the language of Section 5.5E, we cannot interpret the plain language to conclude that the parties intended that the referenced "applicable statutes" include statutory dispute resolution provisions without an inspection component such as those found in the Texas Civil Practice and Remedies Code. *See id.*; *see also Malouf v. State ex rel. Ellis*, 694 S.W.3d 712, 725 (Tex. 2024) (in context of statutory construction, recognizing that "conjunctive 'and' is rarely interchangeable with disjunctive 'or'").

Reading the plain language of this sentence in Section 5.5E in the context of the whole Agreement, we conclude that it is not ambiguous and that it does not contain an irreconcilable conflict as to an essential term of the parties' agreement to arbitrate.

*Section 5.5B and 5.4*

Finally, as support for their position that the parties did not come to a meeting of the minds to submit their disputes to binding arbitration, the Siemenses rely on Section 5.5B, which provides the forum and venue for "[a]ny mediation or arbitration proceeding," and Section 5.4, which provides for the recovery of attorney's fees by the prevailing party "in connection with a dispute that is resolved through arbitration or litigation." The Siemenses argue

23

that there was no meeting of the minds to arbitrate because Section 5.5B "recognizes the availability of 'mediation *or* arbitration' to resolve disputes" and Section 5.4 contemplates arbitration or litigation. However, Section 5.5A expressly excludes certain claims from arbitration—"any and all matters, disputes or claims arising out of or related to copyright, trademark or patent, also known as intellectual property law." Considering Sections 5.4 and 5.5A together, the plain language of Section 5.4 is not irreconcilable with the parties' agreement to arbitrate but is consistent with the availability of attorney's fees in litigation involving the excepted types of claims and in arbitration as to the types of claims subject to arbitration. And as to Section 5.5B's reference to mediation or arbitration, the Agreement contemplates that the parties may attempt to mediate their disputes but if they are unsuccessful, they will proceed with arbitration. For example, Section 5.5A states that if the parties are unable to resolve their dispute by mediation, "then the arbitration proceeding shall continue to conclusion." Thus, we conclude that these sections are not ambiguous and that they do not contain an irreconcilable conflict as to an essential term of the parties' agreement to arbitrate.

For these reasons, we conclude that the trial court abused its discretion to the extent that it denied the motion to compel arbitration based on findings that the Agreement contains ambiguity and irreconcilable conflicts concerning essential terms of the parties' agreement to arbitrate and, thus, that the parties had no meeting of the minds to resolve their disputes by binding arbitration.

**Waiver**

To the extent that the trial court denied Design Tech's motion to compel arbitration based on waiver, Design Tech argues that the Siemenses did not meet their burden to

prove this defense.[7]   The Siemenses' burden was to show that Design Tech "'substantially invoked the judicial process,' which is conduct inconsistent with a claimed right to compel arbitration."[8]   *G.T. Leach Builders*, 458 S.W.3d at 511–12 (quoting *Perry Homes v. Cull*, 258 S.W.3d 580, 593–94, 594 (Tex. 2008)); *see Kennedy Hodges, L.L.P. v. Gobellan*, 433 S.W.3d 542, 545 (Tex. 2014) (per curiam).   "Because the law favors and encourages arbitration, 'this hurdle is a high one.'"   *G.T. Leach Builders*, 458 S.W.3d at 512 (quoting *Richmont Holdings, Inc. v. Superior Recharge Sys., L.L.C.*, 455 S.W.3d 573, 574 (Tex. 2014) (per curiam)).

"We decide waiver on a case-by-case basis by assessing the totality of the circumstances." *Kennedy Hodges*, 433 S.W.3d at 545 (citing *Perry Homes*, 258 S.W.3d at 590). Courts consider a "'wide variety' of factors" when determining whether "a party has substantially invoked the judicial process":

• how long the party moving to compel arbitration waited to do so;

---

[7]   "Waiver—the 'intentional relinquishment of a known right'—can occur either expressly, through a clear repudiation of the right, or impliedly, through conduct inconsistent with a claim to the right."   *G.T. Leach Builders, LLC v. Sapphire V.P., L.P.*, 458 S.W.3d 502, 511 (Tex. 2015) (citing *Perry Homes v. Cull*, 258 S.W.3d 580, 590–91, 594 (Tex. 2008), and *Moayedi v. Interstate 35/Chisam Rd., L.P.*, 438 S.W.3d 1, 6 (Tex. 2014)).   The Siemenses do not assert the defense of express waiver.

[8]   Under Texas law, the party asserting the defense of implied waiver must also establish that "the inconsistent conduct has caused it to suffer detriment or prejudice." *Id.* at 512 (citing *Perry Homes*, 258 S.W.3d at 593–94).   Based on the Supreme Court's opinion in *Morgan v. Sundance, Inc.*, 596 U.S. 411 (2022), the Siemenses argue that a showing of prejudice is no longer required to establish waiver.   *See id.* at 417–19 (concluding that there is no requirement to show prejudice when person waives arbitration by litigating dispute too long); *see also Dallas Excavation Sys., Inc. v. Orellana*, 697 S.W.3d 702, 711 (Tex. App.—Dallas 2024, no pet. h.) (citing *Morgan* to conclude that showing of prejudice is no longer required "at least in cases involving arbitration agreements governed by the FAA").   Because we conclude that the undisputed facts do not support that Design Tech substantially invoked the judicial process, we do not reach this question. *See* Tex. R. App. P. 47.1.

25

• the reasons for the movant's delay;

• whether and when the movant knew of the arbitration agreement during the period of delay;

• how much discovery the movant conducted before moving to compel arbitration, and whether that discovery related to the merits;

• whether the movant requested the court to dispose of claims on the merits;

• whether the movant asserted affirmative claims for relief in court;

• the extent of the movant's engagement in pretrial matters related to the merits (as opposed to matters related to arbitrability or jurisdiction);

• the amount of time and expense the parties have committed to the litigation;

• whether the discovery conducted would be unavailable or useful in arbitration;

• whether activity in court would be duplicated in arbitration; and

• when the case was to be tried.

*G.T. Leach Builders*, 458 S.W.3d at 512 (citing *Perry Homes*, 258 S.W.3d at 590–91). And when, as here, the relevant facts to the determination are undisputed, whether a party waived the right to arbitrate is a question of law. *See id.* at 511 (citing *Kennedy Hodges*, 433 S.W.3d at 545, and *Perry Homes*, 258 S.W.3d at 598 & n.102).

Considering the relevant facts and factors, we observe that there was an eight-month delay between Design Tech's filing suit in November 2022 and filing its motion to compel arbitration in July 2023. As the drafter of the Agreement, Design Tech was aware of its provisions, and its petition asserted affirmative claims for relief without reference to the Agreement's arbitration provisions. The record, however, reflects that counsel for the Siemenses made a written demand under the RCLA and DTPA shortly after Design Tech filed suit, initiating the procedures under those statutes to settle the parties' dispute, and the parties unsuccessfully participated in an unfinished mediation in the month before Design Tech filed its

26

motion to compel arbitration. The Siemenses also were not served with citation and did not appear in the suit until April 2023; when Design Tech filed its motion to compel, no discovery had been conducted, no substantive motions on the merits had been filed by either party, and the case had not been set for trial; and Design Tech sought arbitration within a few months of the Siemenses filing their counterclaims against the Design Tech parties alleging construction defects. *See id.* at 512; *see also Richmont Holdings*, 455 S.W3d at 575 (observing that key factors for deciding waiver of right to arbitrate include whether movant sought "disposition on the merits," amount of discovery conducted by movant, and "reason for delay in moving to enforce arbitration").

Considering the totality of the circumstances, we conclude that the undisputed facts do not show that Design Tech waived its right to arbitrate the parties' dispute by substantially invoking the judicial process. *See G.T. Leach Builders*, 458 S.W.3d at 514–15 (holding that party "has not substantially invoked the litigation process in contravention of its contractual right to arbitration" and collecting cases in which courts declined to conclude waiver); *see also Mac Haik Chevrolet, Ltd. v. Parker*, No. 01-22-00685-CV, 2023 Tex. App. LEXIS 749, at *9 (Tex. App.—Houston [1st Dist.] Feb. 7, 2023, no pet.) (mem. op.) (explaining that waiver of arbitration can be implied from party's conduct but that "conduct must be unequivocal" and in close case, "strong presumption" again waiver governs (citing *Perry Homes*, 258 S.W.3d at 593)); *cf. Courtright v. Allied Custom Homes, Inc.*, 647 S.W.3d 504, 517–21 (Tex. App.—Houston [1st Dist.] 2022, pet. denied) (concluding that trial court did not err in denying motion to compel arbitration when conduct of movant, who filed suit, included waiting twenty-six months after filing suit to seek to compel arbitration and, during that period, conducting discovery and suffering adverse rulings). Thus, to the extent that the trial court

27

denied the motion to compel arbitration based on waiver, we conclude that the trial court abused its discretion.[9]

Because we have determined that none of the grounds asserted before the trial court to deny arbitration were meritorious, we conclude that the trial court abused its discretion when it denied Design Tech's motion to compel arbitration and, on this basis, sustain its first issue. *See U-Haul Co. of Tex.*, 2023 Tex. App. LEXIS 8906, at \*18 (explaining that appellate court must affirm trial court's order denying arbitration if any of grounds asserted before trial court is meritorious).

**Conditional Cross Points**

In two conditional cross points, the Siemenses argue that the Agreement's venue provision for arbitration is unenforceable and request that if this Court reverses the trial court's order denying Design Tech's motion to compel arbitration, we direct the trial court to select an arbitrator to conduct the arbitration in Comal County.

Given that this interlocutory appeal is from the trial court's order denying Design Tech's motion to compel arbitration, we decline to address the merits of the Siemenses' cross points and leave those determinations to the trial court to resolve if requested to do so on

---

[9] The Siemenses cite *Nicholas v. KBR, Inc.*, 565 F.3d 904 (5th Cir. 2009), to support their contention that Design Tech substantially invoked the litigation process. In that case, the Fifth Circuit stated that "the act of a plaintiff filing suit without asserting an arbitration clause constitutes substantial invocation of the judicial process, unless an exception applies." *Id.* at 908. To the extent that the Fifth Circuit announced a rule that is inconsistent with the factors outlined in *Perry Homes*, we decline to follow it. *See RSL Funding LLC v. Pippins*, 499 S.W.3d 423, 430 (Tex. 2016) (explaining that no one factor is controlling and that in close cases, presumption against waiver governs); *In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 783 (Tex. 2006) (orig. proceeding) (declining to conclude that movant who had filed suit had waived right to arbitration).

remand.[10]  *See* Tex. Civ. Prac. & Rem. Code §§ 51.016 (generally authorizing interlocutory appeal from denial of motion to compel arbitration as would be permitted under FAA), 171.098(a)(1) (authorizing interlocutory appeal from order denying application to compel arbitration); *State Fair of Tex. v. Iron Mt. Info. Mgmt.*, 299 S.W.3d 261, 264 (Tex. App.—Dallas 2009, no pet.) (recognizing limited nature of interlocutory appeals and requirement that we construe statutes authorizing such appeals strictly); *see, e.g.*, *Gilani v. Rigney*, No. 02-21-00314-CV, 2022 Tex. App. LEXIS 1689, at *12 (Tex. App.—Fort Worth Mar. 10, 2022, pet. denied) (mem. op.) (concluding in context of appeal from denial of motion to dismiss under TCPA, that "issues go beyond the limited nature of the permitted interlocutory appeal here").

## CONCLUSION

For these reasons, we reverse the trial court's order and remand the case to the trial court.

_____
Rosa Lopez Theofanis, Justice

Before Chief Justice Byrne, Justices Triana and Theofanis

Reversed and Remanded

Filed:  January 10, 2025

---

[10]  Although Section 5.5B of the Agreement provides that any arbitration proceeding shall be commenced, administered and venue shall be in Houston, Texas, it also provides that the parties may agree to venue and that this provision is subject to venue as otherwise required by law.  On appeal, the parties agree that venue is mandatory in Comal County.  *See* Tex. Civ. Prac. & Rem. Code § 15.011 (providing that suit involving land must be filed in county where all or part of land is located).